**Reynaldo IRIZARRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–94–00235–CR.

Court of Appeals of Texas, San Antonio.

Jan. 31, 1996.

Discretionary Review Refused April 10, 1996.

Julie Pollock, Hitchings, Pollock & Bernard, San Antonio, for appellant.

Margaret M. Fent, Assistant Criminal District Attorney, San Antonio, for appellee.

Before HARDBERGER, GREEN, and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Appellant, Reynaldo Irizarry, was charged with and convicted of murder. Punishment was assessed by the jury at ninety-nine years confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. On appeal Irizarry argues that the trial court erred in denying his requested charge on aggravated assault; erred in the application paragraph of the jury charge; erred in denying his motion for new trial; and erred in overruling his objection to the prosecutor's attempt to impeach him with a prior written statement. We affirm.

### FACTS

During Fiesta week of 1993, five friends—Michael Bowman, Robert Dreamkowski, twins Dietrich and Derick Holguin, and Gilbert Valdez—were leaving the carnival at midnight when Reynaldo Irizarry bumped into Derick Holguin. Irizarry spilled his beer on himself and started arguing with Derick. According to Dreamkowski, Irizarry, who was with two other friends, started yelling at them "don't mess with [me]; [you] don't know [me]; [I] own[ ] downtown." Irizarry then pointed at Derick. Dreamkowski then approached Irizarry and told him that they were there just to have a good time and there was no need to hurt Derick. Irizarry responded by asking "why do you want some," and by lifting up his shirt and flashing a gun that he had hidden in his waistband. Dreamkowski backed off. Irizarry turned around and pushed Bowman to the ground.

Dreamkowski then went to find San Antonio Police Officer John Dyer.[1] Dreamkowski found Officer Dyer and told him that Irizarry and his friends had held a gun on him and had a gun on the Holguin twins. As Officer Dyer and Dreamkowski ran back to the group, Irizarry ran into the crowd. Officer Dyer grabbed the two men who were with Irizarry and patted them down for weapons. Finding nothing, he released them. Officer Dyer then told Dreamkowski and his friends to go home.

As the five friends walked back towards their car, they were joined by Dominic Garza and Benjamin Torres. Dreamkowski then saw Irizarry and his two friends coming towards them. Irizarry stepped away from his friends and yelled "do ya'll want to fuck with me now?" Irizarry then walked up to Torres, grabbed him by his shirt collar, pointed a gun to his head, and asked him if he was ready to die. Dreamkowski pushed the Holguin twins away and told them to run. As Dreamkowski began to flee, he saw Irizarry knock Torres to the ground and begin to fire at them. According to Dreamkowski, Irizarry began to run after them while he was firing. Dreamkowski testified that a dozen or more shots were fired and Irizarry reloaded twice. Dietrich testified that he saw Irizarry reload only once. In either event, Derick Holguin was shot in the back as he was trying to escape. He died at the scene.

### JURY CHARGE ERROR

In two points of error Irizarry complains of alleged defects in the jury charge. Irizarry first argues that the trial court erred in denying his requested charge on aggravated assault causing serious bodily injury. Irizarry next argues that the trial court erred in the application paragraph relating to aggravated assault with a deadly weapon. We disagree.

When reviewing charge error, an appellate court must undertake a two-step review. The court must first determine whether error actually exists in the charge. Second, the court must determine whether sufficient harm resulted from the error to require reversal. Which harmless error standard applies depends upon whether Irizarry objected. *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.

---

1. Officer Dyer was considered a friend by the five friends and as someone they could turn to when they needed advice. The five friends had spoken with Officer Dyer shortly before leaving the carnival grounds.

1984). Since Irizarry failed to object to the jury charge, he must show that he suffered actual egregious harm.[2] *Almanza,* 686 S.W.2d at 171.

■ In *Saunders v. State,* 913 S.W.2d 564, 569 (Tex.Crim.App.1995) (en banc), the Court of Criminal Appeals held that the trial court erred in failing to submit a charge on the lesser included offense of negligent homicide because this lesser included offense was raised by the evidence. However, the court reasoned that the error was harmless because the jury convicted Saunders of the greater offense of murder and not the lesser included offense of involuntary manslaughter, upon which the jury was also charged. Since the jury would not have convicted Saunders of murder if it had harbored a reasonable doubt as to Saunder's intent, the omission of a charge on negligent homicide was harmless.[3] *Id.* at 573–74. So it is here. A charge on the lesser included offenses of voluntary manslaughter and aggravated assault with a deadly weapon were given, but the jury convicted Irizarry of murder. Having found no reasonable doubt as to the murder charge, the jury could not have found Irizarry guilty only of aggravated assault causing serious bodily injury.

In light of *Saunders,* we hold that the error, if any, in failing to submit a charge on aggravated assault causing serious bodily injury charge, was harmless. Accordingly, Irizarry's first and second points of error are overruled.

## MOTION FOR NEW TRIAL

In his third point of error, Irizarry contends that the trial court erred in denying his motion for new trial because the evidence revealed that the verdict was decided in a manner other than by a fair expression of opinion by the jurors. We disagree.

Irizarry presented the testimony of one juror, Ms. Polendo, at his hearing on his motion for new trial. Ms. Polendo testified that she never voted to convict Irizarry of murder nor did she ever vote to sentence him to ninety-nine years. Ms. Polendo's testimony was contradicted by another juror and the jury foreman, both of whom stated that there were several votes taken and that on the last two votes the decision was unanimous. There was also a unanimous vote to sentence Irizarry to ninety-nine years. The State also points out that, after the verdict was read and the jury was polled, Ms. Polendo affirmatively stated that that was her verdict.

■ When conflicting evidence is presented at a hearing on a motion for new trial, the trial court must resolve the conflict. *Stanton v. State,* 747 S.W.2d 914, 926 (Tex. App.—Dallas 1988, pet. ref'd). An appellate court will not disturb the trial court's findings absent an abuse of discretion. An abuse of discretion will be found only "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App. 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). "There is no abuse of discretion in overruling the motion for new trial when there is conflicting evidence." *Stanton,* 747 S.W.2d at 926. Irizarry's third point of error is overruled.

---

**2.** Irizarry argues in his brief that he objected to the charge. The record does not support Irizarry's argument. Irizarry read a proposed charge to the trial judge. The judge responded that she did not believe a charge on voluntary manslaughter was raised by the evidence, but that aggravated assault was raised. With regards to aggravated assault, Irizarry asked, "[d]eadly weapon?" The judge agreed. After argument by counsel, the judge added a charge on voluntary manslaughter. No objection to the charge was then made by Irizarry. The following day the judge read the charge in its entirety to the jury, and once again Irizarry did not object. Irizarry has therefore failed to preserve error. *See* TEX. R.APP.P. 52(a).

**3.** By its holding, the Court of Criminal Appeals impliedly overruled this court's holding in *Gonzalez v. State,* 733 S.W.2d 589 (Tex.App.—San Antonio 1987), *pet. dism'd as improvidently granted,* 762 S.W.2d 583 (Tex.Crim.App.1988), in which we held that Gonzalez was harmed by the trial court's failure to include an instruction on the lesser included offense of aggravated assault even though he was convicted of the greater offense of murder and not the lesser included offenses of voluntary manslaughter, involuntary manslaughter, or criminally negligent homicide, which were included in the jury charge.

### PRIOR WRITTEN STATEMENT

In his fourth point of error, Irizarry argues that the trial court erred in overruling his objection to the prosecutor's attempt to impeach him with a prior written statement. Specifically, Irizarry argues that the State "did not follow the correct procedure in laying the proper predicate for impeachment by prior inconsistent statements." We disagree.

On cross-examination, the State asked the following questions:

Q: Did you ever tell anybody that it wasn't Roger Pereida that you went to the Fiesta with?

A: No, sir.

Q: Never told anybody that it was Isaac you went to Fiesta with?

A: No, sir.

The State then asked whether he had made a statement to Detective Joe Morris on April 25, 1993 at 4:00 a.m.[4] Irizarry then admitted making the statement, but added that Detective Morris had "left out a lot of things that [he] had mentioned to him."

■ For the State to impeach a witness with a prior inconsistent statement, a proper predicate must be laid. The witness must first be asked if he made the contradictory statement; "it is [then] usually necessary to specify, in the question or questions to the witness, the place, time and person to whom the statement is made." *McGary v. State*, 750 S.W.2d 782, 786 (Tex.Crim.App.1988); *Huff v. State*, 576 S.W.2d 645, 647 (Tex.Crim. App.1979). It is clear from the record that the State laid the proper predicate. Accordingly, Irizarry's fourth point of error is overruled.

### RELEVANT TESTIMONY

■ In his final point of error, Irizarry argues that the trial court erred in allowing the prosecutor at the guilt/innocence phase of the trial to introduce testimony from Dominic Garza that, when he told Dietrich Holguin that his brother had been killed, Dietrich started crying. Irizarry argues that Garza's testimony was irrelevant because it did not

make "the existence of any fact that [was] of consequence to the determination of the action more probable or less probable." Tex. R.Crim.Evid. 401. We agree with Irizarry that this testimony was irrelevant and therefore inadmissible at the guilt/innocence phase of the trial. *See* Tex.R.Crim.Evid. 402; *see also Miller-El v. State*, 782 S.W.2d 892, 895 (Tex.Crim.App.1990) (en banc). However, to determine whether this error requires reversal, we must conduct a harm analysis. *See* Tex.R.App.P. 81(b)(2).

■ In applying a harm analysis, an appellate court must determine the "probable impact of the error on the jury in light of the existence of other evidence." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). This court must therefore examine the source of the error—whether the State intended to taint the trial in offering the evidence; whether or to what extent the error was emphasized by the State; the probable collateral implications of the error; the probable weight placed on the error by the jury; and determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.; see also Higginbotham v. State*, 807 S.W.2d 732, 734–38 (Tex.Crim.App.1991).

■ Unlike in *Harris,* where the State intentionally sought to introduce an inadmissible confession, there is no evidence that the State intended to taint the process in the present case, and the State did not touch upon this subject again. Nor can we discern any collateral effect arising out of this testimony. Moreover, in light of the overwhelming evidence of Irizarry's guilt and the innocuous nature of the testimony, we conclude that the jury in all likelihood placed little or no weight on it. Finally, we do not believe that holding this error to be harmless will encourage the State to repeat this conduct with impunity. Accordingly, Irizarry's fifth point of error is overruled.

The judgment is affirmed.

---

4. The State did not specifically ask where the statement was made. However, since Detective Morris was sitting down at his computer typing out Irizarry's statement, it can logically be inferred that Irizarry's statement was made at the police station.