Joe Lawrence WASHINGTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–95–00197–CR.

Court of Appeals of Texas,
El Paso.

Aug. 1, 1996.

J. K. 'Rusty' Wall, Law Office of J. K. Rusty Wall, Midland, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for State.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

Appellant, Joe Lawrence Washington ("Washington") appeals his conviction of the offense of indecency with a child by sexual contact. The jury assessed punishment at imprisonment in the Texas Department of Criminal Justice, Institutional Division, for a term of 6 years. This appeal revisits a novel question recently presented to the Court. Washington challenges the jury charge, complaining that the trial court erred in submitting the definition of the culpable mental state "intentionally." He secondarily claims that the evidence was legally insufficient to support the conviction. We affirm.

### SUMMARY OF THE EVIDENCE

When D.H. began working part-time for the Midland Reporter Telegram, Edna Fields agreed to provide child care for J.R.H., the five-year-old son of D.H. Fields operated a beauty salon in her home and a shelter for homeless persons and recovering alcoholics, the residents of which lived in a row of apartments attached to Fields's house. Washington and Fields were cousins, and he worked for her at the shelter.

D.H. left J.R.H. at Fields's house for the first time on September 22, 1992. She testified that J.R.H. did not appear to be upset that first day. When she arrived to pick up the child that evening, J.R.H. was kneeling at a coffee table in a room adjacent to the beauty shop where the shelter residents gathered to watch television and talk. Washington was sitting nearby. When D.H. dropped off her son the following day, J.R.H. seemed very upset; when she picked him up that evening, he appeared subdued and quiet. While she was cooking dinner, J.R.H. came to her and told her, "Bug, my tally whack is hard." [1] Shocked by this statement because

of the child's age, D.H. inquired what he meant. J.R.H. told his mother that his penis was hard because Washington had been playing with it. D.H. examined her son and called the police.

Officer Sam Collins ("Collins") of the Midland police department responded to the call. J.R.H. told Collins and D.H. that Washington had followed him into the bathroom where he had pulled down the child's shorts, fondled his buttocks and squeezed his penis. The child also said that while they were in Fields's car, Washington had pulled down the child's shorts and squeezed his penis in an attempt to make it big. [2] Lastly, J.R.H. stated that while he and Washington were coloring together in J.R.H.'s coloring book, Washington had drawn several pictures depicting J.R.H.'s penis. Several days after D.H. reported the incident, J.R.H. told Detective B.J. Land that Washington had fondled his buttocks and squeezed his penis in the bathroom but he made only ambiguous remarks as to any events in the car. During trial, J.R.H. testified that Washington had followed him to the bathroom, pulled down his shorts, and squeezed his penis, and that he asked Washington to stop, but Washington continued touching him. The child denied that Washington had fondled his buttocks, and he testified that Washington had touched him only once. Washington testified that he only opened the bathroom door for J.R.H. and that he did not go in with him. He offered an explanation as to why the child would lie. He stated that he knew D.H. through a friend of his, and that the two had dated in the past. He testified that he had not been interested in D.H., but that she had exhibited an interest in him and called on occasion. He claimed that D.H. had fabricated the outcry to get even with him. Washington denied ever touching J.R.H. D.H. denied previously having known Washington.

### ERROR IN THE CHARGE

In his first point of error, Washington asserts that indecency with a child by sexual

---

1. "Bug" was a term of endearment that J.R.H. had for his mother. "Tally whack" was the term J.R.H. used to refer to his penis.

2. Fields testified that Washington and J.R.H. had gone to the store together and that Washington was with J.R.H. in the bathroom.

contact is a "nature of the conduct" offense, and therefore, the jury charge was defective because it included the full statutory definition of the term "intentionally." This point of error has two related, but separate, contentions. Similar to the argument raised in *Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim. App.1994), he first contends that from the inclusion of the full statutory definition of "intentionally" in the charge, the jury could have found him guilty of what is essentially a conduct offense by finding that he intended a certain result. We interpret this argument to contend that the trial court should have restricted the definition of intentionally to the "nature of the conduct" element. Seemingly attacking the inclusion of any definition of intentionally, Washington also alleges that the charge permitted the jury to find him guilty without consideration of whether he acted with the specific intent required by the applicable penal statutes. Washington made no objection to the charge at trial.

When reviewing charge error, we utilize a two-step review. The court must first determine whether error actually exists in the charge. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Irizarry v. State,* 916 S.W.2d 612, 614 (Tex.App.—San Antonio 1996, pet. ref'd). In determining whether charge error exists, we must view the charge as a whole and our review should not be limited to a series of isolated statements or parts of the charge standing alone. *See Holley v. State,* 766 S.W.2d 254, 256 (Tex.Crim.App.1989); *Inman v. State,* 650 S.W.2d 417, 419 (Tex.Crim.App.1983). Second, we must determine whether sufficient harm resulted from the error to require reversal. *Almanza,* 686 S.W.2d at 171; *Irizarry,* 916 S.W.2d at 614. Which harmless error standard applies depends upon whether the defendant objected. *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Irizarry,* 916 S.W.2d at 614. Having failed to object, Washington must show that he suffered actual egregious harm. *Almanza,* 686 S.W.2d at 171; *Maldonado v. State,* 902 S.W.2d 708, 713 (Tex.App.—El Paso 1995, no pet.).

The first issue presented in this point of error is essentially the same as that presented in *Caballero v. State,* 927 S.W.2d 128 (Tex.App.—El Paso 1996, no pet. h.). Despite the similarity to *Caballero,* however, we feel the issue merits further discussion.

The elements of indecency with a child by sexual contact are set forth in Section 21.11 of the Texas Penal Code:

(a) A person commits an offense if, with a child younger than 17 years and not his spouse, whether the child is of the same or opposite sex, he:

(1) engages in sexual contact with the child.

TEX.PENAL CODE ANN. § 21.11(a)(1)(Vernon 1994).

The Penal Code defines sexual contact to mean any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. TEX.PENAL CODE ANN. § 21.01(2)(Vernon 1994).

The indictment, tracking the statutory language, alleges that Washington:

[D]id then and there with the intent to arouse and gratify the sexual desire of the said JOE LAWRENCE WASHINGTON, engage in sexual contact with [J.R.H.], a child younger than 17 years of age and not the spouse of the said JOE LAWRENCE WASHINGTON, by then and there touching the male sex organ of the said [J.R.H.].

This indictment correctly alleges the culpable mental state, i.e., the specific intent to arouse and gratify sexual desire, applicable to this offense. *Clark v. State,* 558 S.W.2d 887, 890–91 (Tex.Crim.App.1977)(indictment which alleged that defendant touched child's anus and genitals with intent to arouse or gratify sexual desire sufficiently stated culpable mental state); *see Ex parte Prophet,* 601 S.W.2d 372, 374 (Tex.Crim.App. 1980)(and cases cited therein)(where the gravamen of an offense is an act coupled with a specific intent, the **only** culpable mental state which must be alleged in the indictment is the specific intent required by the statute).

The charge, after setting forth the elements of the charged offense and the defini-

tion of "sexual contact," provided the following definition:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

The application paragraph of the charge tracked the language of the indictment.

 Section 6.03 the Texas Penal Code delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. TEX.PENAL CODE ANN. § 6.03 (Vernon 1994). *Cook,* 884 S.W.2d at 487; *McQueen v. State,* 781 S.W.2d 600, 603 (Tex. Crim.App.1989). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *Cook,* 884 S.W.2d at 487; *McQueen,* 781 S.W.2d at 603. For example, where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself (nature of the conduct). *Cook,* 884 S.W.2d at 487; *McQueen,* 781 S.W.2d at 603. Gambling offenses are one example of an offense containing this conduct element. *See* TEX.PENAL CODE ANN. Ch. 47 (Vernon 1994). On the other hand, unspecified conduct that is criminalized because of its result requires culpability as to that result (result of conduct). *Cook,* 884 S.W.2d at 487; *McQueen,* 781 S.W.2d at 603. Examples of this type of offense are murder, injury to a child, and injury to an elderly individual. Finally, where otherwise innocent behavior becomes criminalized because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances (circumstances surrounding the offense). *Cook,* 884 S.W.2d at 487; *McQueen,* 781 S.W.2d at 603. Theft and unauthorized use of a motor vehicle are examples of offenses involving this conduct element.

We will examine which of these conduct elements are contained in this offense beginning with the "result of conduct" element.

The offense of indecency with a child by sexual contact is obviously not a "result of conduct" offense. Unlike other assaultive offenses such as injury to a child or to an elderly individual, the conduct proscribed by Section 22.11(a)(1) is not criminalized because of its result.

 It is more difficult to determine whether this offense includes the "nature of the conduct" or "surrounding circumstances" conduct elements, or both. At first glance, this offense appears to fit within the "circumstances surrounding the offense" category because touching a child's breast, anus, or genitals is not criminal unless done under certain circumstances, i.e., with the intent to arouse or gratify sexual desire. *See McQueen,* 781 S.W.2d at 603 (unauthorized use of a motor vehicle is a "circumstances" offense because operating another person's motor vehicle is not criminal by its very nature, but what makes the conduct criminal is that it is done under certain circumstances, i.e., without the owner's permission; thus, the culpable mental state must apply to that circumstance). Under *Cook* and its predecessors, the culpable mental state must apply to the surrounding circumstances. That becomes conceptually difficult here because the culpable mental state required by this offense, i.e., the specific intent to arouse or gratify sexual desire, *is* also the surrounding circumstance. By definition, that specific intent must apply to the conduct. Therefore, this offense does not fit so neatly within the "circumstances" category.

 Finally, we consider whether indecency with a child by sexual contact is a "nature of the conduct" offense. Simply put, the precise conduct proscribed by Section 21.11(a)(1), engaging in sexual contact, is not otherwise innocent behavior. Accordingly, we conclude, as we did in *Caballero,* that indecency with a child by sexual contact is a "nature of the conduct" offense. Under *Cook,* we must now consider whether the charge correctly applies the culpable mental state to the nature of the conduct. *See Cook,* 884 S.W.2d at 487. The trial court provided the jury with the full statutory definition of "intentionally." However, Section 21.11(a)(1) and Section 21.01(2) specify the culpable

mental state that must be applied to the conduct, namely, the specific intent to arouse or gratify sexual desire. Thus, it seems superfluous to provide any definition of "intentionally" in the jury charge. We do not find this to be error under the charge as a whole, however, because the application paragraph correctly required the jury to find whether Washington "engage[d] in sexual contact" by touching the victim's penis with the intent to arouse or gratify Washington's sexual desire.[3] Thus, the charge required the jury to find not only whether Washington engaged in the conduct, but whether he did so with the requisite specific intent. Contrary to Washington's argument, the jury could not have found him guilty simply on the basis that he had a conscious objective or desire to touch J.R.H.'s penis, or on the basis that he intended some result other than sexual gratification. Having found no error in the jury charge, Point of Error No. One is overruled.

### LEGAL SUFFICIENCY

In his second point of error, Washington complains that the evidence presented by the State is insufficient to support a guilty verdict. In reviewing the sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find beyond a reasonable doubt the essential elements of the offense, as alleged in the application paragraph of the charge to the jury. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Clemons v. State*, 893 S.W.2d 212, 214 (Tex.App.—El Paso 1995, no pet.). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex. App.—El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.—El Paso 1992, pet. ref'd). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843, citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

Washington asserts that the State's evidence did not show beyond a reasonable doubt that he possessed the intent through his conduct to arouse or gratify anyone's sexual desire. Intent may be inferred from the defendant's conduct, from any remarks made by the defendant, and from the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981); *Nelson v. State*, 893 S.W.2d 699, 705 (Tex.App.—El Paso 1995, no pet.). The application paragraph of the charge reads:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, JOE LAWRENCE WASHINGTON, on or about the 22ND DAY OF SEPTEMBER, 1992, in the County of Midland and State of Texas, as alleged in the indictment, did then and there with the intent to arouse and gratify the sexual desire of the said JOE LAWRENCE WASHINGTON, engage in sexual contact with [J.R.H.], a child younger than 17 years of age and not the spouse of the said JOE LAWRENCE WASHINGTON, by then and there touching the male sex organ of the said [J.R.H.], you will find the defendant guilty of the offense of INDECENCY WITH A CHILD BY CONTACT as alleged in the indictment and so say by your verdict, but if you

---

**3.** Our opinion in *Caballero* does not discuss whether the instruction is erroneous in light of the application paragraph or the charge as a whole. However, in finding the erroneous instruction harmless, the opinion noted that the inclusion of this instruction required the State to prove more than what is otherwise required. *See Caballero*, 927 S.W.2d at 131.

do not believe or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of INDECENCY WITH A CHILD BY CONTACT as alleged in the indictment and say by your verdict 'not guilty.'

The record reflects that Washington followed J.R.H. into the bathroom on one of the two days that J.R.H. was at Fields's house, pulled down the child's shorts, and squeezed his penis. There was additional testimony that Washington fondled J.R.H.'s buttocks, that he squeezed the child's penis on a second occasion, and that he drew pictures of the child's penis in his coloring book. The only controverting evidence is Washington's denial of having touched J.R.H. We may not reweigh the evidence, nor resolve any conflicts in it. The jury chose to believe the child's account of the event. From this evidence, a reasonable jury could conclude beyond a reasonable doubt that Washington possessed the requisite intent to commit the offense. Point of Error No. Two is overruled.

The judgment of conviction is affirmed.