**Freddie MOTILLA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00069–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 8, 2001.

Kenneth P. Mingledorff, Houston, TX, for appellants.

S. Elaine Roch, Houston, TX, for appellees.

Panel consists of Justices AMIDEI, ANDERSON, and BAIRD.[*]

## MAJORITY OPINION

MAURICE AMIDEI, Justice (Assigned).

Appellant, a juvenile, was certified to stand trial as an adult. The grand jury returned an indictment charging appellant with the offense of capital murder. Appellant was convicted of the charged offense and punishment was automatically assessed at confinement for life in the Texas Department of Criminal Justice—Institutional Division. Appellant raises four issues for review. We reverse and remand for a new trial.

## I. Sufficiency Challenges

In his first two issues, appellant contends the evidence is legally and factually insufficient to support the jury's verdict. Specifically, each point contends the evidence is insufficient to establish appellant possessed the specific intent to cause the death of the complainant.

## A. Factual Summary

In the early morning hours of January 1, 1998, the complainant drove his vehicle into a parking lot and, along with two friends, continued the new year's celebration. While listening to music, the complainant and his companions were confronted by appellant and Roman Flores. Appellant withdrew a firearm from his jacket, pointed it at the complainant and his companions and ordered the three men to the ground. However, the men failed to comply and began running. As the two companions fled, they heard two or three gun shots and heard the complainant yell and fall to the ground, mortally wounded.

Appellant and Flores fled the scene, but later returned and found the two companions tending to the complainant. Appellant placed the firearm against the head of one companion and demanded the keys to the complainant's vehicle. Appellant then pointed the firearm at the head of the remaining companion and demanded his gold chain. When the companion complied, appellant and Flores again fled.

The coroner testified the complainant died as a result of a single gunshot wound that entered the back of the right arm, went through the right posterior rib and the right lung, pierced the aorta, went through the sternum and exited the left chest.

Appellant made a statement, which was admitted into evidence. In the statement, appellant stated that in the early morning hours of January 1, 1998, he left the Far West Rodeo Club and traveled to the parking lot of a Shell gas station. He admitted that he robbed and shot a man in that parking lot. He then ran to an apartment complex where he stole a truck and drove away. After colliding with a church, he traveled on foot to his grandmother's home. Appellant stated that he did not know what he was doing because he was drunk.

## B. Standards of Appellate Review

■ We must next determine the appropriate standard of appellate review for resolving these points of error. When we are asked to determine whether the evidence is *legally* sufficient to sustain a conviction, we employ the standard of *Jackson v. Virginia* and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

[*] Former Judge Charles F. Baird sitting by assignment. Former Justice Maurice Amidei sitting by assignment.

doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

When we determine whether the evidence is *factually* sufficient, we employ one of the two formulations recognized in *Johnson v. State*, 23 S.W.3d 1 (Tex.Crim. App.2000). In cases where the appellant attacks the factual sufficiency of an adverse finding on an issue to which he did not bear the burden of proof, as here, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *Id.* at 11. Under a factual sufficiency challenge, the evidence is viewed without the prism of "in the light most favorable to the prosecution" but rather "in a neutral light, favoring neither party." *Id.* at 6. A reversal is necessary only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Id.* at 8. The *Johnson* Court reaffirmed the requirement that in conducting a factual sufficiency review the appellate court must employ appropriate deference to avoid substituting its judgment for that of the fact finder. *Id.* at 7. To ensure this level of deference, the court of appeals, before ordering a reversal, should provide a detailed explanation supporting its finding of factual insufficiency by clearly stating why the fact finder's finding is insufficient. Id. at 8. Finally, the court should state in what regard the evidence is so weak as to be clearly wrong and manifestly unjust.

## C. Legal Sufficiency Analysis

We will first consider the legal sufficiency challenge. Our law requires that in a capital murder prosecution, the defendant must possess the specific intent to cause death. *See* Tex. Penal Code Ann. § 19.03(a)(2). Appellant acknowledges that this specific intent may be inferred from the use of a deadly weapon unless in the manner of its use it is reasonably apparent that death or serious bodily injury would not have resulted. *See Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex.Crim. App.1986). However, relying on *Foster v. State*, 639 S.W.2d 691 (Tex.Crim.App.

1982), appellant correctly argues that such an inference may be rebutted by a defendant's statement. Appellant contends such a statement is present in this case. Additionally, appellant argues the evidence is insufficient to establish the specific intent to kill because the complainant was shot in a non-vital area, and that the complainant was shot only once. We will address these arguments *seriatim*.

First, appellant states the specific intent inference is rebutted because appellant, in his oral statement, "said that it was not his intention to kill the man." The citation for this statement refers us to the closing arguments of defense counsel. Such arguments are not evidence. However, when the oral statement is reviewed, we do not find such a statement. Instead, appellant stated, "I didn't mean to do it. I was just drunk."

Second, a similar argument regarding injury to a non-vital area was rejected in *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994), where the defendant pulled a gun, shot the deceased and "the bullet went through the deceased's right arm and entered his chest." The *Adanandus* Court held the evidence was held sufficient to establish specific intent.

In support of his argument that the single shot establishes lack of intent, appellant cites several cases where specific intent was proven, in part, because more than one wound was inflicted by the defendant. We find those cases distinguishable because, in the instant case, the evidence established that appellant was the only gunman. Further, both the complainant's companions testified that two or three shots were fired. We believe the fact that the defendant fired multiple shots militates in favor of a finding of specific intent.

Accordingly, we find that when the record evidence is viewed in the light most favorable to the prosecution, a rational

jury could have found that appellant possessed the specific intent to cause the death of the complainant. Appellant's first issue is overruled.

### D. Factual Sufficiency Analysis

We now turn to the factual sufficiency challenge and examine the evidence in a neutral light, favoring neither party. *See Johnson*, 23 S.W.3d at 6. In this light, a reversal is necessary only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Id.* at 8.

The evidence that most supports appellant's contention is his own statement that he did not intend to kill the complainant because he was too drunk to know what he was doing. This statement was made approximately three weeks after the complainant's death. When considering this evidence, we note that the State is not required to refute exculpatory portions of a defendant's statements. *See Russeau v. State*, 785 S.W.2d 387, 390 (Tex.Crim. App.1990). And, as the State correctly notes, simply because the defense presents a different version of the events does not render the evidence insufficient. *See Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).

Moreover, in *Johnson*, the Court of Criminal Appeals reiterated the need for deference to the jury:

> The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. *Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.* This evidence is then accorded the appropriate consideration by the reviewing court in the context of its overall analysis of the relevant evidence. The Court of Appeals in *Cain* was unable to rely on the trial record and determine, with any degree of certainty, the believability or veracity of the witnesses. In the case we now consider, the record revealed no reason for an appellate court to question the veracity or honesty of the victim in this case. However, what the record did reveal, and what the Court of Appeals did recognize, was that the accuracy of the victim's identification of appellant was questionable because of the adverse conditions that existed during her brief and obstructed view of the assailant.
>
> In conclusion, the reviewing court must always remain cognizant of the fact finder's role and unique position, a position that the reviewing court is unable to occupy. The authority granted in *Clewis* to disagree with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence.

*Johnson*, 23 S.W.3d at 8. (emphasis supplied, citations and footnotes omitted).

After considering appellant's oral statement, we find ourselves in no better position to assess his credibility than the jurors. The jury obviously chose to disbelieve appellant's self-serving statements regarding his intent. We cannot say that such disbelief was unwarranted considering appellant's unprovoked attack on the complainant and the multiple gun shots.

Because we are not in an appreciably better position to assess the credibility of appellant, we defer to the jury's credibility determination and find the evidence factually sufficient to support the jury's verdict. We overrule appellant's second issue.

## II. Evidentiary Issues

Appellant's third and fourth issues contend the trial court erred in admitting irrelevant evidence and the prejudice from that evidence outweighed its probative value.

### A. Factual Summary

As the State's case-in-chief drew to a close, the penultimate witness was the complainant's adoptive mother. She was called to identify the complainant as being the individual named in the indictment. During her direct examination, the following exchange occurred:

Q. And how is it that you came to adopt [the complainant]? How old?
DEFENSE COUNSEL: Your Honor, may we approach?
THE COURT: Yes.
(At the bench)
DEFENSE COUNSEL: I'll object under the rules—I'll object as irrelevant and more prejudicial than probative
THE COURT: It's overruled.

Following this favorable ruling, the State elicited testimony regarding the complainant's adoption, his health, age and the fact that the complainant had a twin brother. Appellant did not question the witness or otherwise contest the identity of the named complainant.

### B. Relevancy

Appellant's third issue contends this evidence was not relevant. Rule 401 of the Rules of Evidence provides: Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.

EVID. 401. In *Brown v. State*, 757 S.W.2d 739, 740 (Tex.Crim.App.1988), the Court of Criminal Appeals stated evidence is relevant only if it tends to make the existence of a fact more probable or less probable. The *Brown* Court held the rape victim's testimony as to post-rape emotional difficulties was not relevant because the defendant did not contest the victim's rape; rather, the defendant argued someone else raped the victim. Thus, the victim's emotional state did not alter the probability that the rape occurred. *See id.* at 740–41.

In the instant case, appellant did not contest the identity of the complainant. Instead, he argued only that he did not possess the specific intent to cause the complainant's death. The complainant's adoption, his health, age and whether he had a twin brother did not tend to make the existence of any fact more probable or less probable. Consequently, we find the evidence was irrelevant and, therefore, the trial court erred in admitting same.

### C. Prejudice

Assuming, *arguendo*, that the evidence was relevant, we further find any probative value the evidence may have had was substantially outweighed by its prejudice. *See* TEX.R. EVID. 403. Therefore, we hold the trial court erred in admitting the complained of evidence.

### D. Harm Analysis

Having determined that appellant's third and fourth issues are meritorious, we must now conduct a harm analysis. Rule of Appellate Procedure 44.2(b) provides that non-constitutional errors that do not affect the substantial rights of the defendant must be disregarded. *See* TEX. R.APP. P. 44.2(b). The Court of Criminal appeals interprets this rule to mean that a conviction should not be overturned if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *See King v. State*, 953

S.W.2d 266, 271 (Tex.Crim.App.1997). For the reasons set out below, we find that the complained of evidence did influence the jury and was therefore harmful to appellant.

In its indictment, the State charged Appellant with the offense of capital murder. This indictment alleged that Appellant intentionally caused the death of decedent by shooting him with a deadly weapon while in the course of committing or attempting to commit the robbery of decedent. After both sides rested, the court instructed the jury that it could convict Appellant of capital murder only if the evidence proved beyond a reasonable doubt that, while in the course of robbing the decedent, Appellant intentionally shot the decedent with the specific intention of causing his death. Absent a finding of specific intent to kill the decedent, the court also authorized the jury to convict Appellant of felony murder. Based on testimony offered by the State, some relevant and some irrelevant, the jury found that Appellant shot the complainant with the specific intention of causing his death and convicted Appellant of capital murder.

The State, in its brief, argues that any admission of irrelevant victim testimony had either no, or only a slight, influence on the jury's finding of specific intent to kill. After reviewing the evidence offered by the State, we cannot agree. The evidence offered by the State as proof of appellant's specific intent to kill was scant. First, Dr. Moore, the medical examiner for the State, testified that the decedent's death resulted from a single fatal shot entering through the back of the decedent's right arm and continued inward through his right rib, lung, and Aorta, where it finally exited through the chest. Next, the State called two witnesses who had accompanied the decedent on the night in question to testify as to the events surrounding the shooting. While it was established that the appellant did shoot the deceased, neither of these witnesses actually viewed the shooting as

each testified that they were in flight when Appellant's gun sounded. Additionally, the two witnesses testified that after appellant fired his gun, the deceased began to stagger away. However, instead of finishing the job and shooting the deceased a second time, as one specifically intending to murder another would presumably do, the appellant and his accomplice fled the scene. Moreover, both appellant and his accomplice returned to the scene a few minutes later, while the deceased remained alive, and failed to complete the capital murder at that time. Regrettably, the deceased subsequently died of internal hemorrhaging.

Absent any further evidence of appellant's specific intent to kill the deceased, we cannot help but feel that the irrelevant testimony of decedent's mother contributed to the jury's conviction for capital murder. This testimony, adduced by the State in order to invoke sympathy for the victim and his family, resulted in the jury learning the following: that decedent was adopted at a young age and while sick; that decedent and his twin brother became separated as children due to the adoption; that decedent's mother adopted him despite the fact that she was single and had been recently divorced; and, that because of her status as a single parent, decedent's mother had to work hard to support all five of her children. We are troubled that the State adduced testimony regarding the complainant's family near the end of its case-in-chief and do not condone any attempt by the state to persuade the jury to base its verdict on sympathy. Applying the harm analysis required in Rule 44.2(b), then, we do not have fair assurance that the trial court's error in admitting this testimony had no, or but a slight, effect on the jury's finding of capital murder as opposed to the alternative of felony murder. *See* Tex.R.App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).[1] Accordingly, we sustain appel-

1. The dissent characterizes our resolution of the harm analysis as "erroneous and contra-

lant's evidentiary issues and remand the judgment of the trial court for a new trial. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2000).

ANDERSON, Justice, dissenting.

I respectfully dissent to the majority's reversal of this capital murder case based on the trial court's admission of victim impact evidence near the end of the guilt/innocence stage.

During the guilt stage of the trial of Freddie Motilla, the State put the victim's mother on the witness stand and engaged in direct examination of her for approximately four minutes, as follows:

BY MS. CONNORS:

Q. Ma'am, could you please introduce yourself to the Jury?

A. Betty Joann Pampell.

Q. How old are you?

A. Fifty-five.

Q. And how many children do you have?

A. Four of my own.

Q. Did you adopt a child?

A. Yes, ma'am.

Q. And what was the name of your adopted child?

A. Ronnie Lee Fisk.

Q. Have you ever testified before?

A. No, ma'am.

Q. Okay. You need to wait till I finish the question. Are you a little nervous?

A. Yes, ma'am.

Q. Just slow down, because she has to write down everything I say. And then you get to answer and she writes down everything you say. Okay? How old are your children?

A. Well, they range from thirty-eight to twenty-six.

Q. Do you have grandchildren?

A. Yes, ma'am.

Q. And Ronnie Fisk was what number?

A. The last one.

Q. He was your baby; is that right?

A. Yes, ma'am.

Q. And how is it that you came to adopt Ronnie Fisk? How old?

MR. WHEELAN: your honor, may we approach?

THE COURT: Yes.

(At the bench:)

MR. WHEELAN: I'll object under rules—I'll object as irrelevant and more prejudicial than probative.

THE COURT: It's overruled.

BY MS. CONNORS:

Q. How old was Ronnie Fisk when you adopted him?

A. Thirteen months.

Q. When you adopted him, was he sick?

A. Yes, ma'am.

Q. And how was it that you came to learn that he was going to be needed to be adopted? Where were you when you heard this?

A. I lived in what they call the area of Cottage Grove.

Q. Did you work at Texas Children's Hospital?

A. Yes, ma'am. I was a volunteer.

Q. And was Ronnie Fisk a patient at that time, at thirteen months?

A. Yes, ma'am.

---

dictory" based on our conclusion that the State's evidence was legally sufficient to prove the elements of capital murder. However, the dissent fails to understand that a sufficiency of the evidence determination has no place in a harm analysis. Specifically, in conducting a harm analysis, the Court of Criminal Appeals has stated that "the reviewing court should not focus on the weight of other evidence of guilt" but upon the process. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989); *See also Atkinson v. State*, 923 S.W.2d 21, 26 (Tex.Crim.App.1996) (When conducting harm analysis, sufficient or even overwhelming evidence is irrelevant). Thus, the dissent's position is untenable in that it focuses on the result instead of process.

Q. Wait one second. So at thirteen months, did you take him to your home?

A. Well, shortly thereafter.

Q. And at what age did you formally adopt him?

A. Three years old.

Q. Did he live with you—until when?

A. Till he turned eighteen.

Q. And how old was he when he was murdered?

A. Twenty.

Q. When was his birthday?

A. June the 4th.

Q. Of what year?

A. 1997—I mean, '76.

Q. When you adopted him, were you a single parent?

A. Yes, ma'am.

Q. You had been divorced; is that right?

A. Yes, ma'am.

Q. Do you work to support your five children?

A. Yes, ma'am.

I agree with the majority's conclusion that it was error for the trial court to admit this victim impact evidence at the guilt stage because it was irrelevant to any issue regarding the guilt or innocence of appellant.[1] However, the majority goes on to conduct a harm analysis under Appellate Procedure Rule 44.2(b), and concludes that "we do not have fair assurance that the trial court's error in admitting this testimony had no, or but a slight, effect on the jury's finding of capital murder as opposed to the alternative of felony murder."[2] It is at this juncture that the majority has erred. I would hold that the trial court's error in admitting victim impact evidence was harmless, and affirm the conviction.

## I. Harmless Error

Texas Rule of Appellate Procedure 44.2(b) provides as follows:

(b) *Other Errors.* Any other error [other than a constitutional error], defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Here, because no constitutional error was involved when the trial court erroneously admitted the victim impact testimony, the proper inquiry is whether appellant's substantial rights were violated. In essence, the inquiry is whether the error affected the judgment. The United States Supreme Court has held that courts should not try to put the question of whether a substantial right has been affected in terms of burden of proof. *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Rather, the question each judge should ask is "[d]o I, the judge, think that the error substantially influenced the jury's decision?" *Id.*

A substantial right is violated when the error made the subject of the appellant's complaint had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If the error had no influence or only a slight influence on the verdict, it is harmless. However, if the reviewing court harbors "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did. *U.S. v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, if the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harm-

---

1. Victim impact and character evidence are, however, admissible at the punishment stage of trial, subject to certain restrictions under Evidence Rule 403. *Mosley v. State,* 983 S.W.2d 249, 262 (Tex.Crim.App.1998).

2. I have reviewed appellant's brief and cannot find this argument presented in connection with points three and four which are his evidentiary points of error. This raises the concern that this court is reversing based on contentions that were not presented on appeal.

ful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. *O'Neal,* 513 U.S. at 435, 115 S.Ct. 992.

I must conclude in this case that the error's effect on the jury, if any, was so slight that the error was harmless. Here, the jury heard testimony from one of the officers involved in the investigation of the crime about appellant's statement regarding the murder. Specifically, appellant told the officer in a tape recorded statement that "he had robbed and killed a man in the parking lot." A transcript of the tape recorded confession was given to the jury. This evidence has not been challenged by appellant on appeal. Moreover, the majority rejects appellant's other contentions on appeal that the evidence was legally and factually insufficient to support a finding that appellant had the specific intent to kill the complainant. Thus, the majority has concluded that the State satisfactorily proved the elements of the crime of capital murder, and that after reviewing all the evidence, the verdict of guilty is not so against the great weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996) (establishing standard of review for factual sufficiency of the evidence in criminal cases). Nevertheless, despite the adequacy of this proof by the State, the majority has also implicitly reached another, contradictory, conclusion. This erroneous and contradictory conclusion is that the victim impact evidence somehow discouraged the jurors from considering evidence of appellant's lack of murderous intent that is, given legal and factual sufficiency on that point, either non-existent or greatly outweighed by the evidence of appellant's intent to kill.

My conclusion that the victim impact evidence had a de minimis affect on the jury and was, therefore, harmless, is in accord with opinions from other Texas courts. In *Irizarry v. State,* appellant was convicted of murdering Derick Holguin. 916 S.W.2d 612, 614 (Tex.App.—San Anto-

nio 1996, pet. ref'd). During the guilt phase, the prosecutor introduced testimony that when Dietrich Holguin, Derick's brother, was told that Derick had been killed, Dietrich started crying. *Id.* at 616. Appellant contended on appeal that the trial court erred in admitting this irrelevant evidence, and the San Antonio Court agreed. *Id.* The court held, however, that the error was harmless because, among other reasons, the court concluded that the jury in all likelihood placed little or no weight on the testimony. *Id.*

More recently, in *Reeves v. State,* the Waco Court, in a circumstantial evidence case, affirmed the conviction for murder even though the trial court erred in admitting irrelevant evidence. 969 S.W.2d 471, 491 (Tex.App.—Waco 1998, pet. ref'd). There, the trial court admitted testimony that suggested appellant's four year old son knew where his mother's grave was, which the Waco Court noted permitted the jury to become distracted by the idea that appellant took his son to watch his mother's body being buried in some remote wooded area. *Id.* at 490. The court concluded that this evidence should not have been admitted because it tended to mislead the jury and confuse the issues. *Id.* Nevertheless, the *Reeves* court held that the evidence was of such character that it had no more than a slight influence on the jury. *Id.* at 491.

Because the tenor of the erroneously admitted evidence here is neither inflamatory nor misleading or confusing, it admission was harmless error.

## II. Intentional Murder

One of the elements of capital murder under Penal Code section 19 .03(a)(2) is the intent of the actor. Specifically, that section provides that a murder becomes a capital offense when the murder is intentionally committed in the course of committing or attempting to commit robbery. *See* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon 1994). As is almost always the case, the actor's intent must be established by

circumstantial evidence. The evidence here of that intent is, however, quite clear, as chronicled by the majority. Appellant's two arguments against the specific intent required for capital murder were rejected by the majority. One of appellant's arguments negating intent rejected by the majority was that he shot the complainant in the arm, a non-vital area of the body. Rejection was proper based on the court's holding in *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App.1993), adverted to by the majority, that shooting the victim in the arm, causing the bullet to enter his chest, established the specific intent to kill.

The second effort by appellant to negate the intent element of capital murder is his contention that he was drunk and didn't know what he was doing when he shot the complainant. This too was rejected by the majority. That defense is so outrageous that the Legislature has specifically removed it from consideration in our criminal justice system. Section 8.04(a) of the Penal Code states that "[v]oluntary intoxication does not constitute a defense to the commission of crime." TEX. PEN.CODE ANN. § 8.04(a) (Vernon 1994). There is no suggestion in this case that appellant's intoxication was anything other than voluntary.

The evidence presented at trial here is sufficient to support every element of capital murder under 19.03(a)(2), and there is *no evidence* in the record upon which a jury could rationally find that appellant had the intent to rob, but not the intent to cause the death of the complainant. Thus, it is improper here to send this case to another jury to consider felony murder where no specific intent to kill is required because that jury will not have any cognizable evidence [3] for that lesser offense before it.[4] Thus, a remand is not only wrong because the error was harmless, it is also an exercise in futility and a waste of judicial resources.

## III. Conclusion

The evidence here that the majority believes is of such magnitude that a reversal is required took approximately four minutes and was not of an inflamatory nature. Indeed, this testimony was to the effect that the witness had adopted the complainant at an early age. Although it was irrelevant, it did not mislead the jury as to any aspect of appellant's conduct during the offense in the parking lot, nor did it confuse the issues. Moreover, it is quite likely that here, as in *Irizarry*, the jury placed little or no weight on the testimony of the complaint's mother. There are certainly cases where irrelevant testimony is of such a character that the jury seizes upon it in reaching a verdict that they might not otherwise reach, but this is not one of those cases. Accordingly, I would affirm appellant's conviction for capital murder.

---

3. While this record is devoid of evidence that appellant's only intent was to rob, appellant did not testify at the trial below. A new trial, however, pursuant to the majority's holding here, may include somewhat different evidence.

4. Indeed, while appellant obviously did not assert error regarding the helpful felony murder instruction, the writer is convinced that because there was no evidence that appellant only had the intent to rob, but not kill, it was error to submit that charge. *See Adanandus*, 866 S.W.2d at 231.