Opinion issued October 20, 2005 















 
In The
Court of Appeals
For The
First District of Texas




NO. 01-99-01444-CR




EDMUNDO ALVAREZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 825256




MEMORANDUM OPINION
 
          Appellant, Edmundo Alvarez, was convicted by a jury of capital murder.


 The
trial court assessed his sentence at confinement for life. In three issues, appellant
asserts that: (1) the evidence was factually insufficient to prove that he had the
specific intent to kill; (2) he was denied effective assistance of counsel during the
guilt/innocence phase of his trial; and (3) he was denied effective assistance of
counsel during the 30-day period after sentencing, depriving him of the opportunity
to file a motion for new trial. 
          We abated this appeal, allowing appellant’s counsel the opportunity to file a
motion for new trial. Alvarez v. State, 79 S.W.3d 679, 682 (Tex. App.—Houston [1st
Dist.] 2002, pet. dism’d). Appellant’s counsel filed a motion for new trial and
requested a hearing on the motion. The trial court held a hearing on November 19,
2004, and appellant’s trial counsel, C. Brown, testified. The trial court denied the
motion for new trial. 
          Pursuant to our abatement order, the appellate record was supplemented with
the record from the hearing on the motion for new trial. Id. Both appellant and the
State were permitted to brief any issues related to the overruled motion. Id. Neither
party submitted supplemental briefs.
          We overrule appellant’s remaining issues. We affirm.
Background
          The complainant, Eleodoro Bacani, was working late at his sister’s, E.
Shakee’s, convenience store. Shakee testified that the complainant, who had been a
nurse in the Philippines, was working to send money to the Philippines for his wife
and young child. The complainant and his sister were talking on the telephone the
night of his murder. They ended the call when someone entered the store. About ten
minutes after she hung up, Shakee received a call from the alarm company and
learned that an alarm had gone off at the store. 
          Houston Police Department Officer E. J. Nunez arrived at the store in response
to the alarm. Nunez walked around the front counter and found the complainant
crouched down in the fetal position. Nunez saw a large amount of blood and a wound
in the complainant’s head. The complainant was shaking and did not respond to
Nunez. Nunez tugged the complainant, and he fell backwards. Nunez then saw more
blood. He called for an ambulance, sealed the scene, and waited for the homicide
detectives. The complainant was taken to the hospital where he was pronounced
dead. 
          Sergeant L. Ott, of the Houston Police Department’s Homicide Division,
testified that he obtained a warrant for appellant’s arrest several weeks later based on
a tip given by a Sam Houston High School instructor. Ott served the warrant and
arrested appellant. Officer J. L. Escalante, with Houston Police Department’s
Chicano Squad, is fluent in Spanish. At the scene of the arrest, Escalante interviewed
appellant. As a result of this interview, two other persons, A. Salazar and M. Flores,
were also arrested. To ensure there was not a language issue, Escalante took custody
of appellant and took appellant’s videotaped statement. 
          A search warrant to find the murder weapon was obtained for Salazar’s house. 
Salazar’s step-father was at home and told the officers that he owned a revolver like
the one described in the warrant. However, the revolver was missing. Salazar’s step-father confronted Salazar and Flores. The officers were led to an apartment complex
where M. Huerta gave the officers a revolver. The revolver was submitted to the
crime scene unit for fingerprinting and then was submitted to the firearms laboratory
for testing.
          At trial, appellant’s videotaped statement was entered into evidence and played
for the jury. On the videotape, appellant admitted that he went into the store with
several friends, including Salazar and Flores, and pulled out a revolver. Appellant
stated that the complainant gave them the money from the cash register and then bent
down. When the complainant bent down, appellant shot to scare the complainant. 
Appellant said he did not call an ambulance and did not know the complainant was
dead. Appellant admitted that in the past he had smoked marijuana and had drunk
beer.
          M. Lyons, a supervisor in the Houston Police Department’s Forensic Firearms
Laboratory, testified that he tested the revolver and the bullet taken from the
complainant’s head. He stated that the revolver shot the bullet that was recovered
from the complainant’s cranial cavity. He also stated that the revolver was within
proper safety ranges and did not have a “hair trigger.” Lyons testified that the
revolver was a deadly weapon. 
          Officer J. Burrell, a member of the Houston Police Department’s Homicide
Division, processed the store with his partner. Burrell testified that “it appeared that
with the wound going down through [the complainant’s] head that he had ducked
down and the trajectory was down into his head.” Burrell stated that if the victim had
been in the process of bending down, he would have been found in a different
position. Burrell and his partner did not find any bullet holes or other evidence of
firearms in the store; nor did they find blood splatter on any walls or on the counter-top behind which the complainant was found. The store’s safe was locked.
          Dr. S. Wilson, an assistant medical examiner for the Harris County Medical
Examiner’s Office, testified that the complainant’s death was a homicide caused by
a gunshot wound to the head. The bullet entered from the top of the complainant’s
skull and traveled downward, lodging in the base of the skull. Dr. Wilson testified
that the complainant’s wounds were consistent with his having been on his knees with
the shooter standing above him and firing down. Dr. Wilson testified on cross-examination that it was possible that the complainant’s wound would be the same if
he were bending down and the bullet traveled level with his head. Dr. Wilson did not
find gunshot residue on the complainant’s hands. 
          Appellant requested a directed verdict, which the trial court denied. The State
discussed the jury charge and the videotaped statement in its closing. Appellant
discussed the lesser included offense of which the jury could convict appellant if it
believed him not guilty of capital murder. The jury convicted appellant of capital
murder. 
Analysis
          Appellant’s third issue, complaining of deprivation of the opportunity to file
a motion for new trial, was resolved by the hearing on appellant’s motion for new trial
held on November 19, 2004. Therefore, we decide appellant’s remaining two issues.
          Factual Sufficiency
          In his first issue, appellant contends the evidence was factually insufficient to
sustain his conviction.
          A person commits capital murder if he intentionally or knowingly causes the
death of an individual and intentionally commits the murder in the course of
committing robbery. Act of June 19, 1993, 73rd Leg., R.S., ch 900, § 1.01, sec.
19.03, 1993 Tex. Gen. Laws 3586, 3613 (current version at Tex. Pen. Code Ann. §
19.03(a)(2) (Vernon Supp. 2004–2005). Appellant argues that the evidence is
factually insufficient to prove he had the specific intent to kill the complainant as
required by the Texas Penal Code. 
          We begin a factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
483 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the fact finder’s
role as the sole judge of the weight and credibility to be accorded any witness’s
testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight
to be given contradictory testimonial evidence is within the sole province of the fact
finder because it turns on an evaluation of credibility and demeanor; the fact finder
may choose to believe all, some, or none of the testimony presented. Id. at 407–09. 
We must defer appropriately to the fact finder to avoid substituting our judgment for
its judgment. Zuniga, 144 S.W.3d at 481–82. 
          Appellant contends that the only evidence of what occurred in the store was his
videotaped statement. He stated that he shot only to scare the complainant when the
complainant bent down and he did not intend to kill the complainant. He argues that
there were no witnesses and no extrinsic evidence to show that he intended to kill the
complainant. Appellant also contends that there is no evidence to rebut his
contention that he shot the complainant in reaction to the complainant’s bending
down.
          We defer to a jury’s fact findings and will find the evidence factually
insufficient only when necessary to prevent manifest injustice. Cain, 958 S.W.2d at
407. A jury decision is not manifestly unjust merely because the jury resolved
conflicting views of evidence in favor of the State. Id. at 410. Thus, the jury was free
to believe or disbelieve all or any part of appellant’s statement. 
          Here, appellant’s statement contained inconsistencies, for instance, in regard
to which of his friends were at the convenience store when the shooting occurred. 
The jury chose not to believe appellant’s statements; we find ourselves no better
situated to determine appellant’s credibility than the jurors. Moreover, contrary to
appellant’s claim, additional evidence supports the jury’s verdict. First, Dr. Wilson
testified that the complainant’s wound indicated he was kneeling when the shot was
fired, not bending over as appellant contends. Second, Burrell noted the absence of
any blood splatter evidence supporting appellant’s version of events. Third, Lyons
testified that the revolver used by appellant was a deadly weapon, and appellant
admitted, at the very least, firing the weapon toward the complainant at close range.
Employing a deadly weapon in a deadly manner provides strong inferential evidence
of intent to kill. Adanandus v. State, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993).
Though such an inference may be rebutted, the jury chose not to believe appellant’s
claim that he lacked intent to kill. See Foster v. State, 639 S.W.2d 691, 695 (Tex.
Crim. App. 1982) (holding that inference of intent to kill created by use of deadly
weapon is rebuttable) . In light of the evidence, we cannot say that the jury’s
disbelief was unwarranted. 
          Appellant cites Foster v. State in support of his factual insufficiency claim. See
639 S.W.2d 691 (Tex. Crim. App. 1982). In Foster, the Court of Criminal Appeals
reversed a murder conviction upon finding legally insufficient evidence as to the
defendant’s intent. In that case, as in the instant case, the only eyewitness testimony
about the shooting came from the defendant, who denied possessing any intent to kill.
See id. at 694–95 . Foster, however, is distinguishable on several grounds. Notably,
the weapon used in Foster was defective and the physical evidence consistent with
the defendant’s testimony. Id. at 693–95. In addition, the defendant maintained an
amorous relationship with the victim, called an ambulance and the police shortly after
the shooting occurred, was emotionally distraught, and did not flee the scene. Id. 
Here, the facts are almost precisely the opposite. Appellant’s statements are
contradicted by the physical evidence, a non-defective weapon was involved,
appellant fled the scene and made no attempt to notify appropriate authorities, and
appellant had no relationship with the complainant. 
           After examining all of the evidence neutrally, we hold that the proof of guilt
was not so obviously weak as to undermine confidence in the jury’s determination;
nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard
could not have been met. See Escamilla, 143 S.W.3d at 817.
          We overrule appellant’s first issue.
          Ineffective Assistance of Counsel
          In his second issue, appellant contends he was denied effective assistance of
counsel during the guilt/innocence phase of his trial because his trial counsel (1)
failed to object to Shakee’s testimony regarding the complainant’s background and
family; (2) failed to object to the portion of appellant’s videotaped statement that he
had smoked marijuana in the past or to request a limiting instruction concerning such
evidence; and (3) failed to object to the State’s closing argument, “which interjected
expert opinion evidence to the jury through unsworn jury argument” in that the State
told the jury to view appellant during the video as they would if he had given live
testimony and thereby instructed the jurors to notice appellant’s demeanor as he
spoke. 
           We evaluate the effectiveness of counsel under the two-pronged test enunciated
in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). See Hernandez
v. State, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). First, the defendant must
show that his counsel’s representation fell below an objective standard of
reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. To prove this
deficiency in representation, the defendant must demonstrate that his counsel’s
performance deviated from prevailing professional norms. Id. 466 U.S. at 688, 104
S. Ct. at 2065; McFarland v. State, 845 S.W.2d 824, 842–43 (Tex. Crim. App. 1992). 
Second, the defendant must show prejudice. Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064. This requires the defendant to show there is a reasonable probability that, but
for his counsel’s unprofessional errors, the result of the proceeding would have been
different. Id. 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a
probability sufficient to undermine confidence in the outcome. Id. 466 U.S. at 694,
104 S. Ct. at 2068. The failure to satisfy one prong of the Strickland test negates a
court’s need to consider the other. See id. 466 U.S. at 697, 104 S. Ct. at 2069. 
          An appellant bears the burden of proving by a preponderance of the evidence
that his counsel was ineffective. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999). The appellant must overcome the presumption that his trial counsel’s
strategy was sound and must affirmatively demonstrate the alleged ineffective
assistance of counsel. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App.
2003); Thompson, 9 S.W.3d at 814. We cannot speculate beyond the record
provided; rather, a reviewing court must presume that the actions were taken as part
of a strategic plan for representing the client. Young v. State, 991 S.W.2d 835, 837–38
(Tex. Crim. App. 1999). 
          Trial counsel testified at the motion for new trial hearing. The following
discourse took place:
APPELLANT’s COUNSEL: Would you say for the record and for the
appellate court, if need be, what your trial strategy was in not lodging an
objection to [the complainant’s sister’s testimony]?
 
TRIAL COUNSEL: It would be based on the totality of the
circumstances. [Appellant’s] case was a capital, actually wasn’t caught
on the scene or anything like that. I think he ends up letting a teacher or
counselor know what had happened and there was this statement that he
made and the whole type [sic] of the trial, my strategy was to try to get
a lesser included offense and I don’t think it would have been prudent
at that time to object to a grieving person on the stand to try to make her
look bad or anything.
 
APPELLANT’s COUNSEL: Is it fair to characterize your testimony
then as you didn’t want to alienate the jury?
 
TRIAL COUNSEL: Correct.
. . .
 
APPELLANT’s COUNSEL: Moving on to the next issue that has been
raised, marijuana use by [appellant], that came into the testimony. . . .
Did you lodge any objection to evidence of [appellant’s] drug use at
trial?
 
TRIAL COUNSEL: No, I did not.
 
APPELLANT’s COUNSEL: Could you state your trial strategy for not
seeking to have it redacted?
 
TRIAL COUNSEL: Basically that was the only thing he ever had
anything bad about him before, and he was a young man. He was in
high school. Again, I wanted them to know the totality of the
circumstances of who he was.
 
APPELLANT’s COUNSEL: Okay. Was it ever made clear to the jury
that that was the only type of drugs that he had ever used? Was that
issue clarified for the jury that this was an isolated drug that he took or
do you recall?
 
TRIAL COUNSEL: My recollection is, yes, that was basically it,
marijuana use. 
 
APPELLANT’s COUNSEL: So you don’t think objecting to that would
have done any good, basically?
 
TRIAL COUNSEL: Correct.
 
APPELLANT’s COUNSEL: All right. Third issue. . . . And just to
summarize, the prosecutor suggested—and this is my
interpretation—that by his body language on the videotape, the jury
could tell that he was lying at certain points. . . . Would you state for the
record what your trial strategy was in not objecting to that argument?
 
TRIAL COUNSEL: I believe she actually had a right to make that
argument. I don’t think it was objectionable.
 
APPELLANT’s COUNSEL: Had there been any testimony at trial as to
body language and and how it related to credibility?
 
TRIAL COUNSEL: The main issue at the trial was whether this was an
intentional shooting or accidental shooting, so my stance was always
that it was an accidental shooting, that he never intended to shoot the
clerk of that store. Of course, the State’s position was that he formed an
intent at some time during the robbery. So all of that came into play, his
demeanor during the trial, during the statements and, in its totality.
 
APPELLANT’s COUNSEL: But just to summarize, you felt this was
proper argument?
 
TRIAL COUNSEL: I believe it was.
          
          Trial counsel clearly explained his trial strategy, and appellant does not carry
his burden to show that this strategy fell below an objective standard of reasonable
representation. See McFarland, 845 S.W.2d at 842–43. The fact that appellate
counsel may have pursued a different strategy does not by itself indicate ineffective
assistance of counsel. See Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App.
1983). Therefore, appellant has not overcome the presumption that his trial counsel’s
inaction was the result of reasonable trial strategy. See Rylander, 101 S.W.3d at 110;
Thompson, 9 S.W.3d at 814.
          Moreover, we note that the prosecutor’s statement regarding appellant’s
demeanor during his videotaped interview was permissible jury argument. A proper
jury argument “must fall within one of four general areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; and (4) plea for law enforcement.” See Guidry v. State, 9 S.W.3d
133, 154 (Tex. Crim. App. 1999). Jury argument may include reasonable deductions
regarding a witness’s demeanor so long as the witness’s demeanor is properly in
evidence. See Good v. State, 723 S.W.2d 734, 736 (Tex. Crim. App. 1986). Here, the
demeanor at issue was properly in evidence by virtue of appellant’s videotaped
confession. Consequently, the prosecutor’s reference to appellant’s demeanor was
permissible jury argument.
          In regard to Shakee’s testimony, concerning the complainant’s background and
family and appellant’s prior marijuana use, appellant’s claim is further undermined by
his failure to satisfy Strickland’s harm prong. In support of his contention that
Shakee’s victim-impact statements prejudiced the trial’s outcome, appellant relies on
Motilla v. State, a case that has been reversed by the Court of Criminal Appeals. 
Motilla v. State, 38 S.W.3d 821 (Tex. App.—Houston [14th Dist.] 2001), rev’d, 78
S.W.3d 352 (Tex. Crim. App. 2002). In Motilla, the court of appeals reversed and
remanded a capital murder conviction after finding that the trial court erroneously
admitted testimony by the victim’s adoptive mother about his health, age, and adoption
during the trial’s guilt-innocence phase. Motilla v. State, 78 S.W.3d 352, 354-55
(Tex. Crim. App. 2002). The court concluded that the testimony unduly contributed
to the jury’s determination that the defendant acted with specific intent. Id. at 355. In
reversing, the Court of Criminal Appeals observed that “a non-constitutional error
‘that does not affect substantial rights must be disregarded.’” Id. (quoting Tex. R.
App. P. 44.2(b)) (providing harm standard for non-constitutional error). It faulted the
lower court for failing to consider evidence of the defendant’s guilt in conducting its
harm analysis and it noted that “[t]he testimony [at issue] was brief and bore no
relationship to . . . Motilla’s intent.” Id. at 358–59. 
          In the instant case, there was substantial evidence from which a rational jury
could have concluded that appellant intended to kill the complainant. The testimony
by Shakee was brief and bore no relationship to the issue of intent. Considering this
testimony in combination with the overall evidence of appellant’s guilt, we conclude
that no reversible harm resulted from Shakee’s challenged testimony. Similar
reasoning applies to appellant’s admission of marijuana use. The admission of this
evidence, even if erroneous, was irrelevant to the determination of appellant’s guilt
and did not rise to the level of harmful error within the context of all the evidence. 
          We conclude that the record does not indicate that trial counsel’s failure to
object to Shakee’s testimony, appellant’s prior marijuana use, or the State’s closing
argument constituted deficient representation. 
          We overrule appellant’s second issue.
 
Conclusion
          We affirm the judgment of the trial court.
 
Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks. 
Do not publish. Tex. R. App. P. 47.2(b).