**Opinion issued November 26, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-18-00806-CR

———————————

**GUOZHONG GAO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Case No. 16-CCR-187789**

---

**MEMORANDUM OPINION**

Guozhong Gao was convicted by a jury of assault causing bodily injury family violence, a class A misdemeanor. TEX. PENAL CODE § 22.01 (assault), § 22.01(b) (misdemeanor). The trial court assessed punishment at 21 days in jail to be served on weekends and a $3,000 fine. On appeal he complains that the jury should have

been instructed on self-defense, and therefore he should have a new trial. Gao did not request the self-defense instruction nor did he object to its omission. We hold that the trial court did not err in omitting this instruction.

## Background

This case involves a fight between Gao and his wife, Dong Yan "Stephanie" Zhang. On the evening of May 12, 2016, police responded to the couple's house after Stephanie messaged a friend to call the police. Gao had kicked and dragged Stephanie across a room, and when the police arrived, he was blocking her way so she could not leave the house. With no response to knocking on the door and hearing fighting inside, the police broke a master bedroom window, separated Stephanie and Gao, and arrested Gao.

At trial, the jury heard from two responding officers, Stephanie, and Stephanie's friend Jiaqi Yang.

## A.    Dong Yan "Stephanie" Yang's Testimony

Stephanie testified that she met Gao on a Chinese dating website. They communicated for several months before meeting in person in Shanghai in February 2014. In July 2015, Stephanie visited the United States. She believed that they would travel the United States, but once she arrived, Gao told her he was too busy to travel. He physically abused her during her trip, and she returned to China upon the

2

expiration of her visitor visa. She rarely spoke to Gao when back in China, but he continued to send her verbally abusive messages.

In December 2015, Stephanie returned to Houston to attend school. When she arrived, Gao messaged her asking if she needed a ride from the airport or help finding an apartment near the University of Houston. Stephanie decided to give Gao a second chance. She moved into his house and eventually agreed to get a marriage license. She believed that the license would allow them a probationary period of three months before marriage. When they went to the courthouse to get the license, Gao told the clerks that they wanted to get married immediately. Stephanie agreed to marry him, but if he abused her again, she told him she would divorce him and contemplate suicide.

In February 2016, Gao began abusing Stephanie again. Gao choked Stephanie during an argument about moving to Louisiana. The next day, Stephanie called Jiaqi Yang, Gao's former coworker, whom she had met on a previous visit. Yang and her husband visited Stephanie and observed bruises on her arm.

On the evening of May 12, 2016, Stephanie made Gao pancakes for dinner. When the two were in their living room, she asked him about items she found in the house that belonged to other women. She had recently discovered that he had lied to her and had actually been married three times previously instead of only one time. When she asked about his past, Gao became angry, pulled her off the couch, and

3

threw her on the ground. Her head hit the carpet, and she was in pain. Gao kicked Stephanie in the legs and hips multiple times, and she had bruises on her upper right thigh. Stephanie tried to go to the master bedroom, but Gao followed her, pulled her from the bed, and dragged her on the carpet back to the living room, burning her back on the carpet. Stephanie went back to the master bedroom, messaged Yang to call the police. She did not call 911 because in the past, Gao grabbed her phone when he heard her talking on it, and she did not want to upset him.

Stephanie got her purse, turned her cell phone to record, put it in the purse, and attempted to leave the house. Gao stopped Stephanie from leaving when she got to a hallway. He held her arms, using his body to block her. He pushed her back into the living room, causing her to fall. He kicked her lower body and put his foot on her face. He tried to grab her purse, but the handle broke off. He yelled obscenities at Stephanie and said she never respected him.

Stephanie escaped to the master bedroom and saw messages from Yang saying the police were outside. Stephanie then heard someone loudly knocking on the door. She grabbed her purse and went toward the door, but Gao stopped her in the doorway of the master bedroom, preventing her from leaving. He held her arms and pushed her back. Stephanie was crying and shouting. The police broke a window in the master bedroom, separated Gao from Stephanie, and escorted them out of the house.

Stephanie refused to let the officer take pictures of her bruises. She did not want the pictures to be taken because, at that time, she did not want Gao to go to jail. The police arrested Gao that night, and Stephanie continued to have a relationship with him.

Stephanie testified that she had attacked Gao with a water bottle, a stick, her fists, and an object in her hands several times, but she maintained that all of these attacks occurred after May 12, 2016. She testified that in July 2016, Gao falsely accused her of trying to murder him. Around that time, she had an abortion, and in September 2016, she moved out of the house. They divorced in March 2018.

## B.    Deputy W. Coleman's Testimony

Deputy W. Coleman of the Fort Bend County Sheriff's Office testified that he was the first officer to arrive on the scene. Upon arriving, he knocked on the door, but nobody answered. He knocked with increasing force using his fists, baton, and flashlight, and he rang the doorbell for fifteen minutes. Once another deputy arrived, they walked down the side of the house to the backyard. While on the side of the house, Deputy Coleman heard a woman crying and a person getting hit by another person's fists. They knocked on the back door. They could not see anyone but they heard an assault and a woman crying. They tried to open the back door but then decided to break the window to the master bedroom.

When the window broke, Deputy Coleman could hear a woman crying. Gao was sweating and breathing heavily. Stephanie was in the master bedroom closet, crying profusely. Based on the sounds he heard when trying to enter the house, Deputy Coleman believed that a woman was being assaulted. He detained Gao, and the other deputy assisted Stephanie.

## C.    Deputy W. Schoppe's Testimony

Deputy W. Schoppe testified that he also responded to the domestic violence call. As he approached the back of the house, he heard screaming and yelling and a woman in distress. Deputy Schoppe found Stephanie on her knees in the master bedroom crying hysterically. He took Stephanie to his patrol car. While she calmed down, Deputy Schoppe spoke with Gao.

Gao initially told Deputy Schoppe that he and Stephanie had an argument about his previous relationships. He said there was a lot of yelling but no fighting. Gao told Deputy Schoppe that Stephanie tried to leave the house but he stopped her because she was his wife and he did not know where she was going. Gao eventually admitted that there may have been some bodily contact between him and Stephanie. He also told the deputy that he was sitting on the couch when they were trying to enter the house, but through investigation, Deputy Schoppe found that to be false. Gao did not tell Deputy Schoppe that he had any injuries. Deputy Schoppe testified

6

that he had probable cause to arrest Gao for unlawful restraint and assault family violence. Gao was arrested that evening.

Deputy Schoppe then returned to speak with Stephanie. Stephanie would not allow law enforcement to take pictures of her injuries, but he saw bruises on her body. She claimed they were from a previous incident. The jury heard an audio recording of Deputy Schoppe's discussions with both Gao and Stephanie.

### D. Jiaqi Yang's Testimony

Jiaqi Yang also testified. She said that in February 2016, Stephanie told her that she was being abused. Stephanie sent Yang a text message, and Yang responded by phone and visited Stephanie's house to check on her. Stephanie confided in Yang about physical abuse a few more times and showed Yang photos of her injuries from her husband. On May 12, 2016, Stephanie contacted Yang via a messaging application on her cell phone to request that Yang call the police. Yang was unaware of the specific reason why Stephanie needed the police, but based on the past, she feared something may have been happening to her. Yang called the police. About thirty minutes later, the police called Yang to request that she contact Stephanie. The dispatcher told Yang that the police were not getting a response and were unable to make it inside. On the return call, police requested that Yang tell Stephanie to scream so that the police knew they were at the right house. Dispatch followed up with Yang shortly after and informed her that they were able to get inside the house.

7

Stephanie later told Yang about what happened in May 2016 and her account was consistent with the text messages she had sent requesting the police be called. After that incident, Yang was concerned for Stephanie's safety. She testified that she knew of several times where Gao became abusive toward Stephanie but that she never called the police.

The jury found Gao guilty of assault causing bodily injury family violence, and the trial court sentenced him to 21 days in jail to be served on weekends and a $3,000 fine. This appeal followed.

## The Jury Charge

Gao's sole issue on appeal is that the jury charge was erroneous and harmful. He complains that the jury charge should have included an instruction on self-defense, and the omission was egregiously harmful.

Gao neither requested a self-defense instruction nor objected to the omission of the instruction from the charge. He argues that the omission comprises egregious harm as set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), and therefore requires reversal. When a party contends that the trial court erred in its charge to the jury, we must determine whether the charge was erroneous, and if so, whether the error was harmful under the appropriate harm-analysis standard. *Celis v. State*, 416 S.W.3d 419, 423 & n.3. (Tex. Crim. App. 2013).

**A.    The jury charge was not erroneous.**

The trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Article 36.14 states: "[T]he judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011).

Self-defense is a defensive issue. *Gamino v. State*, 537 S.W.3d 507, 511 (Tex. Crim. App. 2017). A defensive issue is not "applicable to the case" unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge. *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) ("Defensive instructions must be requested in order to be considered applicable law of the case requiring submission to the jury."); *see Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998). Defensive issues are treated differently because they involve strategic decisions and tactics generally left to the defense lawyer and the client. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Posey*, 966 S.W.2d at 62. A defendant may decide it would be better trial strategy to forgo a possible instruction that contradicts the defendant's theory of the case. *Posey*, 966 S.W.2d at

63. Thus, even when it is raised by the evidence, the trial court has no duty to instruct the jury on an unrequested defensive issue. *Posey*, 966 S.W.2d at 62; *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Gao did not request a self-defense instruction, and he did not object to the jury charge. The trial court has no duty under article 36.14 to sua sponte instruct the jury on unrequested defensive issues. *Posey*, 966 S.W.2d at 62–63 (a defensive issue is not applicable to the case under article 36.14 unless a defendant requests the issue or objects to the omission of the issue from the jury charge). Consequently, there is no error in the charge and the egregious harm standard does not apply.

**B.      Gao did not meet his burden to produce evidence of self-defense.**

Even assuming Gao had requested a self-defense instruction, the trial court would not have erred in denying it. A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Cleveland v. State*, 177 S.W.3d 374, 380, (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594. Self-defense is a "confession and avoidance" defense. *See Gamino*, 537 S.W.3d at 511; *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Gao was not entitled to a self-defense instruction unless he admitted to the conduct. *VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no pet.) (citing

10

*Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999)); *see Gamino*, 537 S.W.3d at 512 (explaining that to receive a self-defense instruction, defendant must admit to the alleged conduct but does not necessarily need to admit to every element of the charged offense). A defendant is not entitled to a self-defense instruction if he claims, through either his testimony or the testimony of others, that he "did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both." *VanBrackle*, 179 S.W.3d at 715.

Gao was charged with intentionally, knowingly, or recklessly causing bodily injury to Stephanie by grabbing her and shoving her head into the ground with his hand and by kicking her with his leg. The record does not support that Gao sufficiently admitted to committing the alleged conduct.[1] Gao did not testify, nor did any facts raised by the State's witnesses demonstrate his admission of the assault. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc) ("While a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify."); *see also VanBrackle*, 179 S.W.3d at 712 ("Defensive issues may be raised

---

[1]    Gao argues that his counsel argued self-defense in closing argument. Argument of counsel is not evidence admitting the underlying conduct. *See Motilla v. State*, 38 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2001 ) (acknowledging that closing arguments are not evidence), *rev'd on other grounds*, 78 S.W.3d 352 (Tex. Crim. App. 2002); *Mata v. State*, 1 S.W.3d 226, 228 (Tex. App.—Corpus Christi 1999, no pet.) ("[I]t is axiomatic that argument of counsel is not evidence.").

by the testimony of any witnesses, even those called by the State."). But when, as here, a defendant does not testify, there still must be some evidence of the defendant's subjective believe that force was immediately necessary to protect himself. *See* TEX. PENAL CODE § 9.31 ("A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."); *see also Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984) ("[T]o justify the submission of a charge to the jury on the issue of self-defense, there must be some evidence in the record to show that the defendant was in some apprehension or fear of being the recipient of the unlawful use of force from the complainant.").

The record does not support that on the night in question, Gao was in fear of and responding to unlawful force from Stephanie. Deputy Schoppe testified that on the night of the altercation, Gao denied fighting with Stephanie and later admitted there may have been some physical contact. The jury also heard a recording of this conversation. Both officers testified that as they approached the house, they could hear an altercation and a woman in distress. Deputy Coleman testified that based on the sounds he heard when trying to enter the house, he believed that a woman was being assaulted. While Stephanie testified that she had hit Gao during their relationship, she stated that she did so in incidents that occurred after May 2016.

12

There was no evidence that she did so on the night in question such that Gao needed to use force against her to defend himself. *See* TEX. PENAL CODE § 9.31. Since Gao was not entitled to a self-defense instruction, even if he had brought the defense to the court's attention, the trial court would not have erred by omitting the instruction from the jury charge.[2]

We overrule Gao's sole issue.

**Conclusion**

We affirm the judgment of the trial court.

Peter Kelly
Justice

---

[2] Finally, we note that the jury found Gao guilty of assault causing bodily injury family violence. The jury charge defined "family violence" as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." By finding him guilty, the jury implicitly decided that Gao's actions were not defensive measures to protect himself.

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).