Affirmed and Opinion filed August 21, 2008








Affirmed and Opinion filed August 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00428-CR

____________

 

JESUS AYALA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1060482

 



 

O P I N I O N








A jury convicted appellant Jesus Ayala of capital murder
and the trial court sentenced him to life confinement without parole in the
Institutional Division of the Texas Department of Criminal Justice.  In six
issues, appellant contends (1) the evidence was legally and factually
insufficient to support a finding of specific intent to kill; (2) the court
erred in overruling defense counsel=s objections to
the prosecutor=s closing argument, and the cumulative impact of the
improper remarks influenced the jury=s verdict; and (3)
the trial court violated appellant=s Sixth Amendment
right to confront witnesses against him.  We affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2006, the complainant, a roofing contractor,
and his employee, Hector Cruz, went to a Shell service station to buy a
pre-paid telephone card and gas for the complainant=s SUV.[1] 
While they were parked in front of a gas pump, appellant approached the driver=s side of the
complainant=s vehicle, pointed a gun at the complainant, and
demanded money.  After the complainant told appellant he did not have any
money, Cruz opened the passenger side door and ran away.  As he was running, he
heard a gunshot.

Gina Lopez, a customer at the service station, was putting
milk in her vehicle when she heard the gunshot.  After momentarily ducking
behind her vehicle for cover, she saw a dark-colored car pull up behind the
complainant=s SUV and heard the driver tell appellant, who was
standing next to the driver=s side of the complainant=s SUV, to hurry
and get into the car.  Lopez described the man who got into the passenger side
as a Hispanic male wearing a black t-shirt, jeans, and black cap.  The car then
quickly left the service station.  Cruz told Lopez that a stranger had
approached the complainant=s SUV, demanded money, and shot his
employer.  Cruz, whom Lopez described as excited, frantic, and in shock, asked
Lopez if he could use her cell phone to call 9-1-1.  When Lopez looked inside
the complainant=s vehicle, she saw that the complainant
was slumped over the wheel and had a gunshot wound to his chest.








In response to the 9-1-1 call, Harris County Sheriff=s Deputy James
Cassidy was dispatched to the scene.  Upon his arrival, Deputy Cassidy secured
the area and located the witnesses.  He testified that Cruz, who sat in the
deputy=s patrol car for
approximately five minutes before being interviewed, was very excited and upset
by the events.  He further testified that approximately seven minutes elapsed
between his arrival at the scene and his interview with Cruz.  According to
Deputy Cassidy, Cruz told him that he and the complainant had gone to the
service station to buy gas and a telephone card.[2] 
A Hispanic male then approached the driver=s side window,
pulled out a gun, and demanded money.  Cruz told Deputy Cassidy that after the
complainant said he did not have any money, Cruz became scared and fled the
vehicle, after which he heard a gunshot fired.  Deputy Cassidy and Cruz
subsequently went to the complainant=s home to notify
his wife of the shooting.

Phillip Chevallier and Ronnie Dickie, two witnesses who had
initially left the service station after the shooting, returned to the scene to
be interviewed by police.[3] 
Chevallier, a mechanic, testified that he had noticed several cars parked at
the service station that evening, among them a black Volvo with a broken tail
light parked by some pay phones near the entrance to the station.  After paying
for gas and returning to his vehicle to fill it up, he heard a gunshot.  He
then saw appellant move from the driver=s side of the
complainant=s vehicle and get into the passenger side of the
Volvo.  He testified that as he watched the Volvo drive away, he noticed that
one of the tail lights was dimmer than the other.  While Chevallier and Dickie
spoke with Deputy Sean Sergeant at the scene, Chevallier noticed the Volvo
driving by the service station again.  Deputy Sergeant immediately issued a
broadcast describing the vehicle to other police units in the area.

Deputy Richard Crabtrey, who was on patrol that evening,
was in the process of stopping the driver of the Volvo for a traffic violation
when he heard the broadcast.  After he began his pursuit, the driver
accelerated and subsequently parked in the front yard of a residence.  When
Deputy Crabtrey approached the vehicle, the engine was still running but








no one
was in the car.  He called for back up and coordinated a perimeter search of
the area.

Genoveva Castillo, the homeowner in front of whose house
the Volvo was parked, testified that after she and her husband had gone to bed
that evening, she awoke to go to the bathroom.  She saw police cars and the
Volvo parked outside of the house.  As she was returning to the bedroom,
Castillo heard a man=s voice and saw someone standing in the
corner of the living room.  She pretended not to see anything and went back to
the bedroom to tell her husband.  Her husband confronted the intruder and told
him to leave their house.  Castillo and her husband then went outside to alert
the police.  The officers subsequently found the driver, Robert Garza, hiding
in a boat in the Castillo=s backyard.

The Castillos= daughter,
Esmeralda, testified that when she arrived at her parent=s home the next
day, she noticed a black pouch between the flower pots near the front door. 
The police were notified and retrieved the pouch.  Deputy Guy Clayton
identified the weapon inside the pouch as a Smith & Wesson .38 Special with
one spent casing, four live rounds, and one empty chamber.  Deputy Roy Glover,
who processed the crime scene, car, and revolver, testified that appellant=s fingerprints
were found on the driver=s side window of the complainant=s SUV.  Based on
all the information obtained in the investigation, which included interviews
with Cruz and Garza, Houston Police Department Detective Mark Reynolds filed
charges against appellant.

Maria Carabello, appellant=s former
girlfriend, testified that she had picked appellant up early in the morning of
March 7, 2006.  After driving appellant to Wharton where she rented a hotel
room for him, Carabello returned home.  On March 8, 2006, Detective Reynolds
received a tip from Harris County Crime Stoppers regarding appellant=s location. 
Appellant was subsequently arrested in Wharton and brought back to Houston.  In
his videotaped statement, he confessed to shooting the complainant but claimed
that the shooting was an accident.  According to appellant, the weapon
discharged when his arm hit the glass of the partially rolled down driver=s side window of
the complainant=s vehicle.








Dr. Albert Chu of the Harris County Medical Examiner=s Office testified
that the complainant died of a single gunshot to the chest.  He further
testified that a lack of soot or stippling, as well as the projectile=s downward
trajectory, was consistent with a driver being shot by someone standing outside
the driver=s side door.[4] 


Richard Anderson, a firearms examiner with the Montgomery
County Sheriff=s Department, testified that the revolver recovered
from the Castillos= residence had fired the projectile that
caused the complainant=s death.  He further testified that the
weapon=s rebound hammer
lockCa passive safety
device designed to prevent the gun from firing except when the trigger is
pulledCwas properly
functioning.  Anderson concluded that the weapon=s trigger had to
be pulled in order to discharge it, and that merely bumping the weapon=s hammer would not
cause it to fire.

Following deliberations, the jury found appellant guilty of
capital murder.  The trial court assessed punishment at life without parole. 
Appellant timely filed this appeal.

II.  ANALYSIS

A.      Sufficiency
of the Evidence 

In his first two issues, appellant contends that the
evidence is legally and factually insufficient to support his conviction for
capital murder.  Specifically, he argues that the proof was insufficient to
demonstrate that he possessed a specific intent to kill the complainant.








In a legal-sufficiency review, we view all of the evidence
in the light most favorable to the verdict and then determine whether a
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). 
In a factual-sufficiency review, we view all of the evidence in a neutral
light, and we will set the verdict aside only if the evidence is so weak that
the verdict is clearly wrong and manifestly unjust, or the contrary evidence is
so strong that the standard of proof beyond a reasonable doubt could not have
been met.  Escamilla, 143 S.W.3d at 817.

A person commits the offense of capital murder if the
person intentionally causes the death of an individual in the course of
committing or attempting to commit a robbery. 
Tex. Penal Code Ann. ' 19.03(a)(2) (Vernon Supp. 2006).  In the
case of capital murder committed in the course of a robbery, there is no
requirement that the intent to cause death be premeditated or formulated prior
to the commission of the robbery.  See Rousseau v. State, 855 S.W.2d
666, 674 (Tex. Crim. App. 1993).  Rather, the intent to cause death must only
have been formulated when the actor commits murder.  Id.  In a
legal-sufficiency review, the jury=s inference of
intent is afforded more deference than the evidence supporting proof of
conduct.  See Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  That is, circumstantial evidence of a defendant=s guilty knowledge
is not Arequired to meet
the same rigorous criteria for sufficiency as circumstantial proof of other
offensive elements.@  Id.  In determining the legal
sufficiency of the evidence to show an appellant=s intent, and
faced with a record that supports conflicting inferences, a reviewing court Amust presumeCeven if it does
not affirmatively appear in the recordCthat the trier of
fact resolved any such conflict in favor of the prosecution, and must defer to
that resolution.@  Matson v. State, 819 S.W.2d 839,
846 (Tex., Crim. App. 1991).  With these principles in mind, we turn to the
record before us.








A review of the record reveals the following: (1) appellant
shot the complainant with a Smith & Wesson .38 Special in the course of
committing robbery; (2) Cruz told Lopez that a stranger had approached the
complainant=s vehicle, demanded money, and shot his employer; (3)
Dr. Chu testified that the complainant had died from a single gunshot to the
chest and that a lack of soot or stippling, in addition to the projectile=s downward
trajectory, was consistent with a driver being shot by someone standing outside
the driver=s side door; (4) Anderson testified that the gun=s hammer-block
safety was functioning properly, the trigger had to be pulled in order to
discharge the weapon, and merely bumping the firearm would not discharge it;
and (5) in his videotaped statement to police, appellant confessed to shooting
the complainant but said that the shooting was an accident.

Appellant contends that several circumstances in this case
preclude a finding that he possessed a specific intent to kill.  First,
appellant argues that his videotaped statement in which he said that the
shooting was an accident demonstrates that he lacked an intent to kill.  This
argument is without merit.  Here, appellant=s use of a
firearm, a deadly weapon per se, is evidence from which the jury could have
inferred a specific intent to kill, Aunless in the
manner of its use it is reasonably apparent that death or serious injury could
not occur.@  See Medina v. State, 7 S.W.3d 633, 637 (Tex.
Crim. App. 1999).  Appellant=s use of a firearm under these
circumstances was a Amanner of use@ in which death or
serious bodily harm was a likely result.  Threatening the complainant by
pointing a gun at his chest while demanding that the complainant give him money
supports a finding that appellant acted with a specific intent to kill. 
Further, although an inference that death was intended because a deadly weapon
was used may be rebutted by the defendant=s own statement,
merely presenting a different version of the events does not render the
evidence supporting the jury=s finding insufficient.  See Anderson
v. State, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985).  As the trier of fact, the jury is the
sole judge of the credibility of the witnesses and the weight to be given to
their testimony.  See Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999); Bargas v. State, 252 S.W.3d 876, 887 (Tex. App.CHouston [14th Dist.] May 13, 2008, no
pet. h.).   








Next, appellant asserts that because he had Amerely demanded
the complainant=s money@ and Athere were no
prior threats or bad feelings between the parties,@ these
circumstances Adispel any specific intent to kill.@  However, the
offense of capital murder does not include a requirement of a prior
relationship between the accused and the complainant.  See  Tex. Penal Code Ann. ' 19.03(a)(2). 
Thus, the lack of Aprior threats or bad feelings between the
parties@ does not preclude
the jury=s finding of a
specific intent to kill.

Appellant also argues that because only one shot was fired
and the complainant sustained a single gunshot wound, the evidence does not
support the jury=s finding that he possessed a specific
intent to kill.  In support of his argument, he cites to Medina v. State,
7 S.W.3d 633 (Tex. Crim. App. 1994), Mouton v. State, 923 S.W.2d 219
(Tex. App.CHouston [14th Dist.] 1996, no writ), and Motilla v.
State, 38 S.W.3d 821 (Tex. App.CHouston [14th
Dist.] 2001), rev=d on other grounds, 79 S.W.3d 352
(Tex. Crim. App. 2002).[5] 
Appellant=s reasoning is flawed.  The fact that appellant fired
the weapon only once and that the complainant sustained a single wound does
establish a lack of intent to kill.  See Marshall v. State, 210 S.W.3d
618, 620 (Tex. Crim. App. 2006) (upholding appellant=s conviction for
capital murder where victim was shot once in course of commission of robbery).

The evidence is legally and factually sufficient to support
the jury=s finding that
appellant had a specific intent to kill the complainant.  Viewing the evidence
in the light most favorable to the verdict, we conclude that a rational trier
of fact could have found beyond a reasonable doubt that the complainant
possessed a specific intent to kill the complainant.  We further find that the
jury=s verdict was not
against the great weight of the evidence, clearly wrong and unjust, or biased. 
Issues one and two are overruled.

 

 








B.      Jury
Argument

In issues three through five, appellant contends the trial
court erred in overruling defense counsel=s objections to
the State=s closing argument.  Specifically, he argues that several
portions of the prosecutor=s final argument were improper because (1)
she inserted her own feelings and the jury=s purported
feelings into the case and asked the jury to abandon its objectivity; (2) she
asked the jury to find appellant guilty of capital murder rather than felony
murder because that was the verdict the complainant and his family desired; and
(3) of the cumulative impact of the prosecutor=s improper
arguments.

Proper jury argument falls within one of four categories:
(1) summation of the evidence; (2)          reasonable deduction from the
evidence; (3) in response to argument of opposing counsel; and (4) plea for law
enforcement.  See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000).  However, even when an argument exceeds the permissible bounds of these
approved areas, an error will not constitute reversible error unless, in light
of the record as a whole, the argument is extreme or manifestly improper,
violative of a mandatory statute, or injects new facts harmful to the accused
into the trial proceeding.  Id.  Counsel=s remarks during
final argument must be considered in the context in which they appear.  See
Denison v. State, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983) (en banc). 
Attorneys may draw all reasonable, fair, and legitimate inferences from the
facts in evidence.  See Shannon v. State, 942 S.W.2d 591, 597 (Tex.
Crim. App. 1996).

Appellant complains about several remarks that the
prosecutor made in the following portion of the State=s closing
argument:

PROSECUTOR: Ladies and gentlemen, this is not a case about Jesus Ayala
anymore as much as it is about a case about what kind of society you want to
live in.

DEFENSE COUNSEL: Objection, Your Honor, that=s improper.     

THE COURT: Overruled.








PROSECUTOR: This is a case about what you want to allow on the streets
of Houston.  It is a case about what wild and crazy story someone can come in
and tell a jury and they=ll accept.  And when you pass
judgment on why there are bad people out there, you can look back on this
case.  You decide today what kind of society you want to live in, and what B

DEFENSE COUNSEL: Judge, I=m going to renew my objection.  That=s improper, talking about societal
[sic], objection.

THE COURT: Overruled.

PROSECUTOR: You decide.  And I submit to you that you=ll never pull into a gas station
again without thinking about Jesus Ayala, never again.  I know I won=t.

DEFENSE COUNSEL: Objection, Your Honor, that=s improper.

THE COURT: Overruled.

PROSECUTOR: And I hope you also think of Carmen, and her children, and
Juan, and the justice they=re entitled to.

DEFENSE COUNSEL: Your Honor, that is improper, and I=m going to continue to object.

THE COURT: Overruled.

PROSECUTOR: And on this day, when you=re in the 12 seats, I ask you to deliver them that
justice.

DEFENSE COUNSEL: Objection, Your Honor, that=s improper.

THE COURT: Overruled.

PROSECUTOR: Convict that man of the offense that he deserves to be
convicted of, capital murder.  There=s nothing, nothing else that is fair and right in this
case.

DEFENSE COUNSEL: Objection, Your Honor, that=s improper.

THE COURT: Overruled. 








Appellant first contends that the prosecutor=s suggestion that
neither she nor the jury members would go to a gas station again without thinking
of appellant was improper.  He argues that by inserting her own fears and those
of the jury into the case, the prosecutor asked the jury to abandon its
objectivity.[6]








In support of his argument, appellant relies upon Brandley
v. State, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985), and Torres v.
State, 92 S.W.3d 911, 922 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  In Brandley, the prosecutor
asked the jurors during the punishment phase of the trial to place themselves
in the shoes of the child victim=s father.  See
Brandley, 691 S.W.2d at 712.[7] 
Defense counsel objected,
the court sustained the objection, and the judge instructed the jury to
disregard the statement.  Id. at 713.  The
Court of Criminal Appeals found the argument to be an improper plea to the
jurors to abandon their objectivity,  but nevertheless harmless in light of the
record as a whole and the timely instruction to disregard.  Id.  In Torres,
during the punishment phase of the trial, the prosecutor asked the jurors to
put themselves in the place of the victim.  See 92 S.W.3d at 920.[8] 
After providing an insightful historical analysis, the Torres court
concluded that the prosecutor=s remarks were merely an appeal to the
jury to apply their general knowledge and experience to the evidence adduced at
trial, and that it did not unfairly influence the jury=s recommendation. 
Id. at 920B24.

Notwithstanding the fact that the remarks at issue in Brandley
and Torres were made during the prosecutor=s arguments during
the punishment phase, we find those arguments distinguishable from the
prosecutor=s remark here.  In those cases, the prosecutor
directly urged the jury to imagine and focus on the events of the criminal act
as if it had actually happened to them and their families.  See Linder v.
State, 828 S.W.2d 290, 303 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d).  Such an argument openly pleads with
the jury to abandon its objectivity in deciding the case.  See Brandley,
691 S.W.2d at 712.  Here, by contrast, the prosecutor did not ask the jurors to
abandon their objectivity by placing themselves in the victim=s shoes.  Rather,
when viewed in light of the immediately preceding and subsequent remarks, it is
clear that her comment was part of a broader plea for law enforcement and,
thus, falls within one of the four categories of proper jury argument.  See
Wesbrook, 29 S.W.3d at 115.  The trial court did not err by overruling
appellant=s objection.  We overrule his third issue.








Appellant next contends the prosecutor=s remarksCAI hope you also
think of Carmen, and her children, and Juan, and the justice they=re entitled to . .
. And on this day, when you=re in the 12 seats, I ask you to deliver
them that justice@Casked the jury to
find appellant guilty of capital murder rather than felony murder to fulfill
the expectations of the complainant and his family.  Appellant argues that, in
doing so, the State asked the jury to do Athat which the law
prohibits, namely have the accused=s verdict, or
punishment, assessed by the victim and his family, or by a jury endeavoring to
assess the verdict and punishment the victim, or his family, desires.@  Torres,
92 S.W.3d at 921.  The State counters that the prosecutor merely urged the
jurors to think of the justice the family was entitled to based on the evidence
adduced at trial and, therefore, her remark was a proper plea for law
enforcement.  The State further asserts this  is so, particularly in light of
her next remark, AConvict that man of the offense that he
deserves to be convicted of, capital murder. . . .  There=s nothing, nothing
else that is fair and right in this case.@  We agree.  The
prosecutor did not ask the jurors to render a verdict based on what the
complainant=s family desired; rather, she urged them to convict
appellant of capital murder because the evidence supported such a verdict.  See
Martinez v. State, 17 S.W.3d 677, 693 (Tex. Crim. App. 2000) (finding that
remark that victims and their families Acry out . . . for
the death penalty in this case@ was a plea with the jury to give the
death penalty Abecause the record before the jury showed that the
defendant deserved it.@).[9]

We overrule appellant=s fourth issue. 
In light of our disposition of issues three and four, we do not reach appellant=s fifth issue
related to the cumulative impact of the prosecutor=s arguments.

C.      Confrontation
Clause








In his sixth issue, appellant contends that the admission
of Cruz=s out-of-court
statements to Deputy Cassidy violated his right to confront witnesses against
him under the Sixth Amendment.  He argues that the statements were barred under
Crawford v. Washington, 541 U.S. 36, 53-54 (2004), and their admission
constituted reversible error.[10] 
The State counters that appellant failed to object under the Confrontation
Clause and, thus, waived his argument on appeal.

At trial, Deputy Cassidy testified that he arrived within
ten to fifteen minutes of the shooting, and that he initially secured Cruz in
the back of his patrol car until he could interview him.  Deputy Cassidy
testified that Cruz appeared very excited and upset by what had happened, and
that he was still under the influence of the events when Cassidy spoke to him. 
When the State asked Deputy Cassidy if Cruz had told him why he was at the
service station that night, defense counsel objected and the following exchange
took place during a bench conference:

PROSECUTOR: I thought I laid the excited utterance predicate.

THE COURT: How far?  How long after the B

PROSECUTOR: He said it was within 10 or 15 minutes of the shooting, and
he was still under the influence of it.

DEFENSE COUNSEL: Well, the problem with that is this officer wasn=t there at the time of the
shooting.  He was one of the earlier officers that arrived.  He doesn=t know what time the shooting was.

THE COURT: Well, he said 10 or 15 minutes early in his testimony.

DEFENSE COUNSEL: Your Honor, what he said was he had already, the
victim had already left.  He doesn=t know how B he hasn=t testified as to the incident that
had occurred before he was there.

THE COURT: Well, okay.  All right.  Overruled.

PROSECUTOR: I=ll clarify that.  Okay.

DEFENSE COUNSEL: The other objection to this, Your Honor, is the
declarant, the person who made this statement, hasn=t been determined whether or not he=s available or not.

PROSECUTOR: He=s not available.  He=s gone, but I don=t think that applies.  Availability
of declarant is immaterial under the excited utterance, but the availability is
immaterial.

THE COURT: Overruled.








After the State resumed its examination of Deputy Cassidy,
defense counsel again objected on hearsay grounds and conducted a voir dire of
the witness.  He specifically questioned Deputy Cassidy as to the length of
time between the shooting, his arrival at the scene, and his subsequent
interview of Cruz, and thereafter renewed his hearsay objection.

Appellant argues that after his counsel objected to Deputy
Cassidy=s testimony on
hearsay grounds, he Aalso made the court aware of a possible
Confrontation Clause violation by further objecting that the declarant was not
available.@  The State contends that defense counsel=s objection
regarding Cruz=s availability was not an objection under the
Confrontation Clause but, instead, an objection to the State=s attempt to
introduce the evidence under the excited-utterance exception to the hearsay
rule.  See Tex. R. Evid. 803(2)
(excluding from hearsay rule 802 Aa statement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition.@).

The excerpt above reflects that after the trial court
overruled his initial hearsay objection to Deputy Cassidy=s testimony,
defense counsel objected on the grounds that the witness=s availability had
not yet been determined.  The prosecutor confirmed that Cruz was not available,
stating, AHe=s gone, but I don=t think that
applies. . . . Availability of declarant is immaterial under the excited
utterance . . . .@  Had defense counsel intended to lodge an
objection under the Confrontation Clause, this was his opportunity to clarify
the basis for his objection to the court.  Instead, after the trial court
overruled his objection and the prosecutor had resumed her questioning of
Deputy Cassidy, defense counsel once again objected to the testimony as
hearsay, and conducted a voir dire of the witness which focused solely on the
time that had elapsed between the shooting, his arrival at the scene, and his
interview of Cruz.  After he concluded the voir dire, defense counsel renewed
his hearsay objection.








To preserve a complaint for appellate review, a party must
have presented the trial court with a timely request, objection, or motion
stating the specific grounds for the ruling sought unless the specific grounds
are apparent from the context.  Tex. R.
App. P. 33.1.  We conclude that appellant failed to object on
Confrontation Clause grounds, and that such a ground was not apparent from the
context.  Thus, appellant has failed to preserved this issue for review.  See
Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (holding
appellant=s failure to specifically object under Confrontation
Clause at trial waived challenge on appeal); Oveal, 164 S.W.3d at 739
n.2 (finding appellant=s failure to object on Confrontation
Clause grounds waived complaint on appeal).  Appellant=s sixth issue is
overruled.

III.  CONCLUSION

Having overruled appellant=s six issues, we
affirm the judgment of the trial court.

 

 

 

 

/s/      Jeff Brown

Justice

 

 

 

Judgment rendered
and Opinion filed August 21, 2008.

Panel consists of
Justices Yates, Anderson, and Brown.

Publish C Tex. R. App. P. 47.2(b).









[1]  According to Humberta Palacios, the complainant=s wife, her husband wanted to get gas for the SUV so
that she could drive their daughters to school before he left the next day for a
construction project in Mississippi.





[2]  Cruz told Deputy Cassidy that he lived with the
complainant and his family and that the complainant was his employer.





[3]  Chevallier testified that he had initially left the
scene because he was out on bond and had several outstanding arrest warrants
for traffic violations.  However, when he and Dickie later drove by the
station, Dickie wanted to stop, and Chevallier felt guilty for leaving the
scene, so they returned to talk to the officers.





[4]  Dr. Chu testified that gunpowder stippling, which
refers to marks on the skin caused by either unburned or partially burned
gunpowder particles, can generally be seen within a distance of two feet
between the end of a weapon and the target. 





[5]  In Medina and Mouton, the juries found that evidence of
multiple wounds and gunshots evinced a specific intent to kill.  See Medina,
7 S.W.3d at 637; Mouton, 923 S.W.2d at 223.  In Motilla, the
court concluded that evidence showing the appellant had fired the weapon
multiple times prior to the deadly shot was sufficient to prove a specific
intent to kill.  See Motilla, 38 S.W.3d at 824.





[6]  The State argues that appellant failed to preserve this complaint for
review.  Specifically, it contends that because defense counsel objected only
that the remark was improper, he did not apprise the trial court of the grounds
for the objection, and the grounds were not apparent from the context.  See Tex. R. App. P. 33.1; Cooper v.
State, 961 S.W.2d 222, 228 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d).  Although the objection could
have been more specific, we must nevertheless consider it in its proper
context.  See Denison, 651 S.W.2d at 761.  Immediately preceding the
objection at issue, defense counsel stated, AI=m going to renew my objection. 
That=s improper, talking about societal
[sic], objection.@  Immediately following the
objection in question, counsel had stated, AYour Honor, that is improper, and I=m going to continue to object.@  Thus, viewed in context, defense
counsel was arguably objecting to the complained-of remark on the same ground
as his previous and subsequent objections, i.e., as an impermissible
request to satisfy community expectations.  Under these circumstances, we will
afford appellant the benefit of the doubt and assume that his trial counsel=s objection to the impropriety of
the remark was based on the same ground.  





[7]  The prosecutor argued, AIt is fair for you to think about the feelings of the
father who lost his baby daughter and it is fair for you to think about how you
would feel if you lost your children . . . .@





[8]  The prosecutor argued,

 

I think it is very easy in the course of a trial to hear evidence in a
very antiseptic, sort of unemotional way, and for a moment before you decide
what to do with this defendant, I want you to close your eyes and think of how
that young man felt. . . . Don=t you know he was scared?  Don=t you know he said to her, [A]Don=t leave me.  Please don=t let me die.  I love you.[@]  Nobody should have to die that way and that is worthy of
your consideration.  





[9] The Martinez court assumed, without deciding,
that the comment did not fall within the permitted categories of jury argument,
and conducted a harm analysis.  See Martinez, 17 S.W.3d at 692.  Noting
that the complained-of remark appeared to constitute a plea for law
enforcement, the court concluded that because the degree of misconduct, if any,
was relatively mild, and the evidence supporting appellant=s death sentence was strong, error, if any, was
harmless.  See id. at 693B94.





[10]  In Crawford, the United States Supreme Court held that
out-of-court statements by a witness, who fails to testify at trial, are barred
by the Confrontation Clause unless the witness is unavailable to testify and
the accused had a prior opportunity to cross-examine the witness, regardless of
whether such statements are deemed reliable under the rules of evidence.  541
U.S. at 1369-74; Oveal v. State, 164 S.W.3d 735, 739 n.2 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).